[L.A. No. 31705. Dec. 19, 1983.]

**CARSON MOBILEHOME PARK OWNERS' ASSOCIATION,**
Plaintiff and Respondent, v.
**CITY OF CARSON et al., Defendants and Appellants.**

**COUNSEL**

Richards, Watson, Dreyfuss & Gershon, Glenn R. Watson, Mary L. Walker, Rochelle Browne and Carol W. Lynch for Defendants and Appellants.

Myron Moskovitz, James R. Grow, Michael Heumann, Stephen Wiman, Mary Ann Yurkonis, Robert M. Myers, City Attorney (Santa Monica),

Stephen S. Stark, Assistant City Attorney, and Karl M. Manheim, Deputy City Attorney, as Amici Curiae on behalf of Defendants and Appellants.

Lazof & Swanson, C. Brent Swanson, Terry R. Dowdall and Ellis J. Horvitz for Plaintiff and Respondent.

Latham & Watkins, Stephen L. Jones and George Kimball as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**BIRD, C. J.**—The sole issue presented by this case is whether the City of Carson's mobilehome rent control ordinance is constitutional on its face.

I.

In May of 1979, the Carson City Council adopted a 90-day moratorium on rent increases in mobilehome parks. The moratorium was designed to preserve the status quo while the city council considered what legislative solution, if any, would be appropriate to combat rapidly increasing mobilehome rents and a serious shortage of mobilehome rental spaces.

Approximately three months later, the city council adopted ordinance number 79-485U regulating rent increases and evictions in mobilehome parks. The ordinance was adopted as an urgency measure which was effective immediately.[1]

The ordinance, designed in light of this court's decision in *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129 [130 Cal.Rptr. 465, 550 P.2d 1001],

---

[1]In adopting the ordinance the city council made the following findings of necessity and urgency:

"*Section 2.* There exists in the City of Carson and the surrounding area a shortage of mobilehome spaces which has resulted in a low vacancy rate and rapidly rising space rents. The purchase of a mobilehome involves a substantial investment, and its relocation is expensive and difficult. On May 23, 1979, the City adopted a ninety-day mobilehome space rent moratorium so that the purpose and intent of this ordinance would not be undermined or defeated prior to its adoption. On July 30, 1979, the moratorium was extended to November 19, 1979. Unless this ordinance takes effect immediately, however, a number of mobilehome park owners may suffer unnecessary hardship since the moratorium prohibits mobilehome space rents from exceeding the rents in effect on May 1, 1979. Further, any delay in the implementation and enforcement of this ordinance will continue the uncertainty that now exists between owners and tenants in the mobilehome parks within the City.

"This ordinance affects the public peace, health, and safety and shall take effect immediately."

sets the rent charged for any particular space on May 1, 1979, as the maximum rent which can be charged for that space absent application to a rental review board. Base rents were set at the May 1, 1979, level because the rents then in effect had been chosen by park owners on the basis of market factors without regard to city-adopted rent control legislation.

The ordinance directs the Mobilehome Park Rental Review Board (Board) to "approve such rent increases as it determines to be just, fair and reasonable." In making that determination, the Board is to consider 12 factors specified in the ordinance as well as "any other factors it considers relevant."[2]

The ordinance permits park owners to submit one application for all the spaces in a particular park. The Board must hold a hearing within 90 days of the date on which the application is submitted, and a final decision must be rendered within 15 days. Thus, the Board has a total of 105 days in which to act on a rent increase application. In the event the Board is unable to make its decision within the prescribed period, the ordinance indicates that an interim increase should be granted.[3] The ordinance also mandates

---

[2] The 12 factors specified for consideration in determining whether a requested rent increase is "just, fair and reasonable" are as follows:

"(1) Changes in the Consumer Price Index for All Urban Consumers in the Los Angeles-Long Beach-Anaheim Metropolitan Area published by the Bureau of Labor Statistics.

"(2) The Voluntary Pay and Price Standards promulgated by the President of the United States or any other lawfully established state or federal government wage and price guidelines.

"(3) The rent lawfully charged for comparable mobilehome spaces in the City of Carson.

"(4) The length of time since the last rent increase for the mobilehome space or spaces specified in the rent increase application.

"(5) The completion of any capital improvements or rehabilitation work related to the mobilehome space or spaces specified in the rent increase application, and the cost thereof, including such items of cost, including materials, labor, construction interest, permit fees and other items as the Board deems appropriate.

"(6) Changes in property taxes or other taxes related to the subject mobilehome park.

"(7) Changes in the rent paid by the applicant for the lease of the land on which the subject mobilehome park is located.

"(8) Changes in the utility charges for the subject mobilehome park paid by the applicant and the extent, if any, of reimbursement from the tenants.

"(9) Changes in reasonable operating and maintenance expenses.

"(10) The need for repairs caused by circumstances other than ordinary wear and tear.

"(11) The amount and quality of services provided by the applicant to the affected tenant.

"(12) Any existing written lease lawfully entered into between the applicant and the affected tenant."

[3] The ordinance recognizes the Board's obligation to act in a timely manner. Section 4704, subdivision (i) provides that the Board may grant an interim increase if it is unable to act within the prescribed time. Subdivision (j) provides that the time within which the Board may make its determination may be extended *if* the Board approves an interim increase pursuant to subdivision (i). These provisions indicate that some interim increase should be granted if the Board's final decision is to be postponed beyond the 105-day limit.

review by the city council of its terms, effectiveness and continued necessity.

In addition, the ordinance includes provisions protecting those tenants not already covered by the Mobilehome Residency Law (Civ. Code, § 798 et seq.) from retaliatory or unreasonable eviction.

The trial court granted plaintiff's motion for a preliminary injunction enjoining the application or the enforcement of the ordinance. The court held that "[t]he ordinance, on its face, fail [sic] to provide sufficient guidelines to determine a just and reasonable return on the property," and is thus unconstitutional.

The Court of Appeal found the ordinance's guidelines constitutionally sufficient but held the ordinance unconstitutional on other grounds. The appellate court felt that the delays inherent in the procedure for notice, hearing and decision, combined with the lack of any mechanism for a general rent adjustment, made the ordinance unconstitutionally confiscatory under *Birkenfeld, supra,* 17 Cal.3d 129.

After a careful review of the ordinance, it appears that there are both sufficient standards for the guidance of the Board and a constitutionally adequate rent adjustment mechanism.

## II.

■ ■ ■ ■ ■ The first issue this court must decide is whether the ordinance is unconstitutional because it lacks sufficient standards to govern its administration.[4]

---

[4]Plaintiff does not dispute that Carson's adoption of the rent control ordinance was a proper exercise of the city's police powers. It is well settled that "legislation regulating prices or otherwise restricting contractual or property rights is within the police power if its operative provisions are reasonably related to the accomplishment of a legitimate governmental purpose." (*Birkenfeld, supra,* 17 Cal.3d at p. 158; accord *Nebbia* v. *New York* (1934) 291 U.S. 502, 537 [78 L.Ed. 940, 957, 54 S.Ct. 505, 89 A.L.R. 1469].) As this court noted in *Birkenfeld,* rent controls will be sustained as a proper exercise of the police power unless there is a "complete absence of even a debatable rational basis for the legislative determination . . . that rent control is a reasonable means of counteracting harms and dangers to the public health and welfare emanating from a housing shortage." (17 Cal.3d at p. 161; accord *Hamer* v. *Town of Ross* (1963) 59 Cal.2d 776, 783 [31 Cal.Rptr. 335, 382 P.2d 375]; *Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 461-462 [202 P.2d 38, 7 A.L.R.2d 990].) In the present case, the imposition of mobilehome rent controls is a rational curative measure designed to counteract the ill effects of a "shortage of mobilehome spaces which has resulted in a low vacancy rate and rapidly rising space rents."

It is also "settled California law that . . . the existence of an emergency is not a prerequisite to such legislation." (*Birkenfeld, supra,* 17 Cal.3d at p. 158; accord *Wholesale T. Dealers* v. *National etc. Co.* (1938) 11 Cal.2d 634, 654-655 [82 P.2d 3, 118 A.L.R. 486].)

Plaintiff contends that the ordinance's provisions for adjustment of maximum rents fail to provide sufficient standards to guide the Board in acting on applications and, thereby, constitute an unlawful delegation of legislative power.

■ An unconstitutional delegation of authority occurs only when a legislative body (1) leaves the resolution of fundamental policy issues to others or (2) fails to provide adequate direction for the implementation of that policy. (*Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 376-377 [71 Cal.Rptr. 687, 445 P.2d 303].)

The general standard set forth in the Carson ordinance is that rent increases shall be granted by the Board upon a determination that they are "just, fair and reasonable." In making its determination, the Board is directed to consider 12 specified, but nonexclusive, relevant factors.

In *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d 129, this court determined that a similar provision provided constitutionally sufficient legislative guidance to the rent control board. The charter amendment in *Birkenfeld* listed six nonexclusive relevant factors the board was to consider in reviewing rent adjustment petitions.[5] The board was given additional guidance by the charter amendment's stated purpose of "counteracting the ill effects of 'rapidly rising and exorbitant rents exploiting [the housing] shortage.'" (*Id.,* at p. 168.)

■ As this court noted in *Birkenfeld,* "[s]tandards sufficient for administrative application of a statute can be implied by the statutory purpose." (*Ibid.*) ■ The purpose of the Carson ordinance is similar to that of the Berkeley Charter amendment—to counteract the ill effects of "a shortage of mobilehome spaces which has resulted in a low vacancy rate and rapidly rising space rents." This court's conclusion concerning the sufficiency of the standards provided by Berkeley's Charter amendment is equally apt here. "By stating its purpose and providing a nonexclusive illustrative list of relevant factors to be considered, the [ordinance] provides constitution-

---

[5]The Berkeley Charter amendment provided that "[i]n reviewing . . . petitions for [rent] adjustments, the Board shall consider relevant factors including but not limited to the following: (a) increases or decreases in property taxes; (b) unavoidable increases or decreases in operating and maintenance expenses; (c) capital improvement of the rent-controlled unit, as distinguished from ordinary repair, replacement and maintenance; (d) increases or decreases in living space, furniture, furnishings or equipment; (e) substantial deterioration of the rent-controlled unit other than as a result of ordinary wear and tear; and (f) failure on the part of the landlord to provide adequate housing services." (*Birkenfeld, supra,* 17 Cal.3d at pp. 167-168.)

ally sufficient legislative guidance to the Board for its determination of petitions for adjustments of maximum rents." (*Ibid.*)

That the ordinance does not articulate a formula for determining just what constitutes a just and reasonable return does not make it unconstitutional. Rent control agencies are not obliged by either the state or federal Constitution to fix rents by application of any particular method or formula. As the United States Supreme Court has stated, "[t]he Constitution does not bind rate-making bodies to the service of any single formula or combination of formulas." (*Power Comm'n* v. *Pipeline Co.* (1942) 315 U.S. 575, 586 [86 L.Ed. 1037, 1049-1050, 62 S.Ct. 737]; accord *Power Comm'n* v. *Hope Gas Co.* (1944) 320 U.S. 591, 601-602 [88 L.Ed. 333, 344, 64 S.Ct. 281].) The method of regulating prices is immaterial so long as the result achieved is constitutionally acceptable. (*Hope Gas Co., supra,* 320 U.S. at p. 602 [88 L.Ed. at p. 345] ["it is the result reached not the method employed which is controlling"].) In *Birkenfeld, supra,* 17 Cal.3d at page 165, this court relied on these United States Supreme Court cases to expressly reject the notion that any particular formula must be used in determining a just and reasonable return.

Accordingly, this court concludes that the trial court erred when it determined that the ordinance lacked sufficient standards to govern its administration.

### III.

The next question to be addressed is the constitutionality of the ordinance's provisions for adjusting maximum rents.

Plaintiff contends that the delay inherent in the procedure for notice, hearing and decision, combined with the lack of any mechanism for automatic general rent increases, makes the Carson ordinance unconstitutionally confiscatory under *Birkenfeld, supra,* 17 Cal.3d 129.

In *Birkenfeld,* this court noted that rent control legislation "may be invalid on its face when its terms will not permit those who administer it to avoid confiscatory results in its application to the complaining parties." (*Id.,* at p. 165.) ■ Where rent ceilings of an indefinite duration are established, a mechanism must be provided for granting those increases necessary to permit landlords a just and reasonable return. "The mechanism is sufficient for the required purpose only if it is capable of providing adjustments in maximum rents without a substantially greater incidence and degree of delay than is practically necessary. 'Property may be as effectively taken by long-

continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them . . . .' " (*Id.*, at p. 169, quoting *Smith* v. *Illinois Bell Tel. Co.* (1926) 270 U.S. 587, 591 [70 L.Ed. 747, 749, 46 S.Ct. 408].) Some delay is, of course, inherent in all rent control procedures. However, only those delays which are longer than practically necessary to achieve the legitimate purposes of the legislation are constitutionally proscribed.

The Berkeley Charter amendment in *Birkenfeld* was held to have transgressed constitutional limits by requiring the rent control board to follow a procedure which would make unreasonable delays in adjusting maximum rents inevitable. (*Id.*, 17 Cal.3d at p. 169.)

The *Birkenfeld* charter amendment suffered from a number of procedural infirmities not found in the ordinance now before this court. As an initial matter, it must be remembered that the mechanism for granting rent increases is to be "examined in relation to the magnitude of the job to be done." (*Birkenfeld, supra,* 17 Cal.3d at p. 169.)

The job to be done under the Berkeley rent control amendment was staggering. At least 16,000 rental units were subject to the provisions of the amendment. (*Id.*, at pp. 169-170.) The Berkeley rent control board had no power to adjust rent ceilings on any one of these thousands of units until it had received a separate petition for that individual unit and had considered the petition at an adjustment hearing. (*Id.*, at p. 170.) Petitions for hearing could be consolidated "only if they relate[d] to units in the same building and then only with the written consent of a majority of the tenants." (*Ibid.*) Before an application could be submitted, the landlord had to obtain a certificate from the city building inspector that the premises complied with state and city housing codes based upon an inspection made within the preceding six months. (*Ibid.*) Finally, the amendment provided no express limit on the length of time within which a decision had to be made on a petition.[6] "These provisions put the Board in a procedural strait jacket." (*Id.*, at p. 171.) The Berkeley amendment was simply inadequate for the enormous job to be done.

---

[6]The amendment required that the parties be given 16 days notice of a hearing on a rent adjustment petition. However, no limit was set on the amount of time after a petition was filed within which the hearing had to be held. (*Birkenfeld, supra,* 17 Cal.3d at p. 139.) As a result, it could take years to process an application under the amendment. If Berkeley landlords applied for rent increases for only one-fourth of the 16,000 affected units, and if the board could hear and determine 1 application every day of the year, it would have taken almost 11 years to determine just those applications.

■   The ordinance now before the court stands in sharp contrast to the Berkeley Charter amendment. Indeed, the Carson ordinance was drafted in light of *Birkenfeld* and successfully avoids the constitutional pitfalls of the provision invalidated in that case. Unlike the Berkeley amendment, the Carson ordinance permits mobilehome park owners to submit consolidated applications for all the spaces in a particular park. The City of Carson has only 32 mobilehome parks. Thus, while the Carson ordinance, like the Berkeley amendment, requires that rent adjustments be made only upon application to a rent review board, the "job to be done" is significantly smaller.

The procedures of the Carson scheme are carefully tailored to meet the legitimate interests of the ordinance "without a substantially greater incidence and degree of delay than is practically necessary." (See *Birkenfeld, supra,* 17 Cal.3d at p. 169.) Under the ordinance, the Board has a maximum of 105 days to act on an application.[7] If the Board has not acted within that time, the ordinance provides that an interim increase should be granted. These provisions ensure that a landlord will not suffer impermissibly confiscatory rents longer than is necessary for a relatively prompt determination of the merits of his or her application.

It does not appear that the time allowed for review and determination of rent increase applications is excessive. Within the 105-day period, the Board must (1) review all information provided by the applicants, including complex financial and tax data, (2) review comments received from tenants, and (3) hold a hearing at which the interested parties are permitted to testify.

Careful review of the information provided to the Board is important. The financial and tax data submitted by the applicant reveals whether the owner's

---

[7] The ordinance requires that the Board hold a hearing within 90 days of the date on which the application is submitted and render a final decision within 15 days of the hearing.

Plaintiffs argue that the entire process may take up to five and one-half months due to the operation of Civil Code section 798.30. That section is a part of California's Mobilehome Residency Law and provides as follows: "The management shall give a homeowner written notice of any increase in his or her rent at least 60 days before the date of the increase." Thus, once the Board approves an application, the park owner must give his or her tenants 60 days notice of the impending increase.

That the Carson ordinance must operate in conjunction with Civil Code section 798.30 does not make it unconstitutional, however. By enacting section 798.30, the Legislature has determined that the 60-day notice requirement is necessary to accomplish the purposes of the Mobilehome Residency Law. And, as explained *infra,* the 105-day period allowed by the Carson ordinance is reasonably related to the task which the rent review board must perform. Both time limits are necessary to the accomplishment of the respective purposes of the two enactments. In any event, a delay of five and one-half months, although longer than might be considered ideal, still compares favorably to the unlimited delay permitted by the amendment considered in *Birkenfeld.*

profits have increased or decreased, whether the property taxes or operating costs associated with the park have increased or decreased, and whether any capital improvements have been made. Review of the information supplied by the tenants helps the Board determine whether there has been any increase or decrease in the services provided by the park operator. The consideration of such factors in determining rent increases was specifically approved by this court in *Birkenfeld, supra,* 17 Cal.3d at pages 167-168.

Clearly, the Carson ordinance avoids the confiscatory delays which were inherent in the Berkeley amendment's unit-by-unit procedure. Further, it is reasonably related to the legitimate governmental purpose of eliminating excessive rents.

Plaintiff also challenges the ordinance's failure to provide a mechanism for general rent adjustments based upon changing economic conditions or other relevant circumstances.

In *Birkenfeld, supra,* 17 Cal.3d at page 171, this court cited the board's inability to order general rent adjustments as *one* of the provisions which put the Berkeley rent review board in a "procedural strait jacket." Combined with other procedurally deficient aspects of the amendment, this inability to formulate general rules "denied [the board] the means of reducing its job to manageable proportions . . . ." (*Ibid.*)

In this case, no such manageability problems result from the absence of a general rent adjustment mechanism. As previously noted, the City of Carson contains only 32 mobilehome parks. Thus, no more than 32 applications could be pending before the rent review board at any one time. This contrasts sharply with the potential that existed under the Berkeley law for thousands of applications to be before the board at any given time. ■ Measured "in relation to the magnitude of the job to be done" (*Birkenfeld, supra,* 17 Cal.3d at p. 169), the absence of a general rent adjustment procedure does not make the Carson ordinance constitutionally deficient.

Rather, the Carson ordinance is designed to allow the consideration of all relevant evidence and to provide for prompt increases *when justified.* In the City of Carson, these purposes are likely to be better served by a procedure requiring owners to petition for rent increases, than by one which would grant such increases automatically.

The Carson approach allows the Board to ensure that rent increases are tied to the owners' actual costs and expenses, rather than to the average costs of the industry. It also permits consideration of property maintenance

patterns in determining allowable increases. A change in general economic conditions, such as an increase in taxes, inflation, or the Consumer Price Index, might indicate that a general rent increase is in order. However, an increase might not be warranted for a particular mobilehome park if there has been a decrease in maintenance expenditures or a reduction in services provided to the tenant.[8] Indeed, to allow such a park to take advantage of a general rent increase would be contrary to the legitimate governmental purpose of eliminating excessive rents. Also, it would be unfair to those parks which have not reduced tenant services.

Under the Carson approach, any rental adjustment is carefully tailored to the needs of both landlords and tenants. Surely, the ordinance should not be constitutionally faulted for its failure to provide a mechanism for granting unnecessary rent increases.

Because the delays inherent in the rent adjustment procedures of the ordinance are not "substantially greater . . . than is practically necessary" (*Birkenfeld, supra,* 17 Cal.3d at p. 169), and because a general rent adjustment mechanism is not constitutionally required under the circumstances here presented, this court concludes that the Carson ordinance is a valid and constitutional mechanism for regulating mobilehome rents.[9]

## IV.

This court concludes that the Carson ordinance is constitutional on its face. ■ It is well settled that courts lack jurisdiction to enjoin the enforcement of a validly adopted constitutional ordinance. (*Conover* v. *Hall* (1974) 11 Cal.3d 842, 849-850 [114 Cal.Rptr. 642, 523 P.2d 682]; Code Civ. Proc., § 526.) Accordingly, the trial court's order granting plaintiff's motion for a preliminary injunction is reversed.

---

[8]"Rent control would be self-defeating were landlords permitted to reduce maintenance expenditures and allow buildings to deteriorate because their profits have been regulated downward." (*Orange Taxpayers Council* v. *City of Orange* (N.J.App.Div. 1979) 169 N.J. Super. 288 [404 A.2d 1186, 1193], affd. (1980) 83 N.J. 246 [416 A.2d 353].)

[9]The City of Carson also contends that the provisions of the ordinance regulating evictions are constitutional and are severable from the provisions regulating rent adjustments. The validity of the eviction provisions has never been challenged by plaintiff and was not addressed by either lower court. Because the preliminary injunction prohibits the enforcement of the entire Carson ordinance, however, it would effectively invalidate the eviction provisions as well as those regulating rents.

Since Carson's contention is mooted by reversal on the merits of the rent control provisions, it need not be addressed here.

Mosk, J., Richardson, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

Respondent's petition for a rehearing was denied January 18, 1984.