[Nos. D016072, D016083. Fourth Dist., Div. One. Aug. 9, 1993.]

JOHN YEE et al., Plaintiffs and Appellants, v.
MOBILEHOME PARK RENTAL REVIEW BOARD, Defendant and
Respondent.

## Counsel

Robert J. Jagiello and Debra K. Butler for Plaintiffs and Appellants.

Endeman, Lincoln, Turek & Heater, Donald R. Lincoln, Linda Reich Duncan, David R. Chapman and Jeffrey Epp for Defendant and Respondent.

## Opinion

THOMPSON, J.*—In these consolidated appeals, plaintiffs John and Irene Yee, owners of two contiguous mobilehome parks in the City of Escondido (the City) subject to rent control, appeal the denial of their petitions for writ of mandate seeking to invalidate the City's decision authorizing only a $27.50 increase in rents. We conclude that the decision of the Escondido Mobilehome Rental Review Board (the Board) is not supported by substantial evidence and hence the judgment must be reversed and the matter remanded to the Board for reconsideration.

To aid the Board on remand we note the following. While the Board purported to follow the fair "return on equity" approach to determine the Yees' claim for increased rents, it appears to have committed a serious error by failing to account for interest payments on the encumbering loans in determining the income (or loss) resulting from operation of the parks. In attempting to justify the Board's result on appeal by means of a different theory, the City improperly treats property appreciation and tax shelter benefits as imputed income in assessing the Yees' total return on their investment. On remand, however, the Board would not be precluded from considering the *potential* for appreciation (or depreciation) in rent controlled properties and tax shelter benefit in general (but not with regard to the

---

*Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.

particular property owner) in determining the appropriate *rate* of return to the extent such factors are supported by substantial evidence. We reject some of the Yees' other contentions and do not reach others.

### FACTUAL AND PROCEDURAL BACKGROUND

In July 1986 the Yees purchased the Friendly Hills and Sunset Terrace mobilehome parks for a total price of $3,350,000. Friendly Hills has 87 spaces; Sunset Terrace has 72. In June 1988 Escondido voters passed a mobilehome rent control initiative ordinance (the Ordinance). It provided, among other things, for a rollback of rents to January 1, 1986, levels and designated the Escondido City Council as the Mobilehome Park Rental Review Board to consider requests for rent increases filed by park owners.

The Ordinance provides that upon application by the lessor, "[t]he Board shall approve such rent increases as it determines to be just, fair and reasonable." It declares further that in making this determination, the Board shall consider "in addition to any other factors it considers relevant" the following:

"(1) Changes in the Consumer Price Index for All Urban Consumers in San Diego Metropolitan Area published by the Bureau of Labor Statistics.

"(2) The rent lawfully charged for comparable mobilehome spaces in the City of Escondido.

"(3) The length of time since the last hearing and final determination by the board on a rent increase application or the last rent increase if no previous rent increase application has been made.

"(4) The completion of any capital improvements or rehabilitation work related to the mobilehome space or spaces specified in the rent increase application, and the cost thereof, including such items of cost, including materials, labor, construction interest, permit fees, and other items as the board deems appropriate.

"(5) Changes in property taxes or other taxes related to the subject mobilehome park.

"(6) Changes in the rent paid by the applicant for the lease of the land on which the subject mobilehome park is located.

"(7) Changes in the utility charges for the subject mobilehome park paid by the applicant and the extent, if any, of reimbursement from the tenants.

"(8) Changes in reasonable operating and maintenance expenses.

"(9) The need for repairs caused by circumstances other than ordinary wear and tear.

"(10) The amount and quality of services provided by the applicant to the affected tenant.

"(11) Any existing written lease lawfully entered into between the applicant and the affected tenant."

Between July 1986 (when the Yees purchased the parks) and June 1988 (when the Ordinance was passed), average rents at Friendly Hills had increased $58 or 28 percent. Average rents at Sunset Terrace had increased $61 or 30 percent. In June 1989 the Yees filed rent increase applications for both parks, seeking average increases for Friendly Hills and Sunset Terrace of 63 and 64 percent respectively. The applications included an appraisal and rate-of-return analysis in which the Yees calculated the current appreciated value of the two parks at $4,334,000.[1] Deducting for the amount of current indebtedness, the Yees claimed equity in the two parks of approximately $1.5 million and asserted entitlement to a reasonable return on that amount. (1) A methodology such as this which focuses on the owner's equity rather than the total cost or value of the property can be referred to generally as a "return on equity" approach. (See generally Baar, *op cit. supra,* 35 Rutgers L.Rev. at p. 790.)

As part of the application review process, the city building department inspected both parks. It characterized the general condition of Friendly Hills as "good," Sunset Terrace as "fair," and noted a number of past and present code violations including electrical and lighting deficiencies, erosion and drainage problems, and inadequate maintenance and repair.

Following a hearing in December 1990, the Board voted unanimously to authorize a rental increase of $27.50 at Sunset Terrace. A similar motion

---

[1] The Yees support their calculation of appreciated value based on replacement cost, arguing it "is the only appraisal method not dependent on rental rates." We note this methodology has been questioned by one leading academic authority in the field. (See Baar, *Guidelines for Drafting Rent Control Laws: Lessons of a Decade* (1983) 35 Rutgers L.Rev. 723, 803.) We neither approve nor disapprove this method of computation as it relates to prospects of appreciation relevant to determining rate of return. (See *Palomar Mobilehome Park Assn.* v. *Mobile Home Rent Review Com.* (1993) 16 Cal.App.4th 481, 489, fn. 3 [20 Cal.Rptr.2d 371].)

with respect to Friendly Hills carried by a vote of four to one.[2] Both increases were to go into effect in 60 days but only if all code violations had been cleared by the building department.

In reaching its decision the Board accepted part of the return-on-equity approach advocated by the Yees but computed fair rate-of-return in reference to cost rather than current value. ▮▮ The Board determined that the investment of the Yees entitled to a fair rate of return was their combined cash cost of $500,000 for the two parks, and allocated $250,000 to each. The Board did not treat encumbering notes representing the bulk of the Yees' purchase price as part of the investment nor did it specifically allow interest payments as a deduction from operating income.[3] Instead, on the apparent assumption that each of the two Yee mobilehome parks was operating at the break-even point and having further assumed that a fair rate of return was 10 percent, the Board then calculated a rent increase necessary to produce $25,000 at each park.

After noting that it had considered the factors described in the Ordinance and paying particular attention to factor 2—the comparable rents charged at other Escondido mobilehome parks—the Board adjusted the $29 per month per space yielded by its rate of return analysis downward to $27.50. This latter figure satisfied comparability as to the Sunset Terrace Park, but an increase of $54 per space per month would have been required to make rates at Friendly Hills comparable. The Board nevertheless adhered to its $27.50 figure on the theory that future rent increases over time could achieve comparability. The Board also considered changes in the Consumer Price Index (CPI) but concluded that only about one-half of that increase was warranted. Evidence in the administrative record cited by the Yees discloses that if interest and depreciation expenses are considered, each of the parks in fact operated at a substantial loss. (See *ante*, fn. 3.) The Board's briefs on appeal do not point to any evidence supporting its assumption that the parks were operating at the break-even point. Our own review of the record discloses no such evidence.

The Yees then filed their petitions for writ of mandate contending that the $27.50 rent increase authorized by the Board was inadequate and denied them a constitutionally required fair return on their investment. The superior court denied the petitions and the Yees appeal.

[2]Board Member DeDominicis would have granted an increase of $5 to $6 dollars higher than the $27.50 approved.

[3]1989 interest payments were $335,951 for the two parks combined. If interest payments are deducted as an expense, the parks had an operating loss of $122,732 in 1989. If interest payments are not deducted, they had operating income of $213,219. There is, therefore, no basis on which to conclude that the parks were operating at a break-even point.

In this appeal the Yees' contend: (1) the rent control ordinance is an unconstitutional denial of substantive due process; (2) the ordinance is so worded as to be unconstitutional for denial of procedural due process; (3) the decision of the Board lacks support in substantial evidence; and (4) they are entitled to damages and attorney fees.

## DISCUSSION

### I. *Constitutionality*

Citing *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129 [130 Cal.Rptr. 465, 550 P.2d 1001] and *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805 [258 Cal.Rptr. 161, 771 P.2d 1247] the Yees' claim that the Board's refusal to grant them significantly greater rent increases denies them substantive due process of law because the fair return on their investment must be computed on the basis of the fair market value of the investment in the relevant year. Compelling authority requires rejection of the Yees' argument. ■ Both the United States and California Supreme Courts have held that a fair-return-on-value standard is not constitutionally required. (*Duquesne Light Co.* v. *Barasch* (1989) 488 U.S. 299, 308-310 [102 L.Ed.2d 646, 657-659, 109 S.Ct. 609]; *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 686 [209 Cal.Rptr. 682, 693 P.2d 261], affd. on other grounds, 475 U.S. 260 [89 L.Ed.2d 206, 106 S.Ct. 1045].) As we explained recently in *Palomar Mobilehome Park Assn.* v. *Mobile Home Rent Review Com.*, *supra*, "[A] governmental entity may choose to regulate pursuant to any fairly constructed formula even though other proper formulas might allow for higher prices."[4] (16 Cal.App.4th at p. 487.) For example, a constitutionally permissible alternative is that of the "historical cost" approach even if it results in lower revenues than a value-based standard.[5] (*Federal Power Com'n* v. *Hope*

---

[4]In *Palomar* we also rejected an argument similar to that made by the Yees here that the California Supreme Court's decision in *Calfarm Ins. Co.* v. *Deukmejian*, *supra*, 48 Cal.3d 805 mandates the use of a "return on value" standard. (See *Palomar*, *supra*, 16 Cal.App.4th at p. 485, fn. 1.)

[5]The "historical cost" standard treats the actual cost of the property including that represented by encumbrances (the rough equivalent of book value) as the "investment" and the net operating income with no deduction for interest paid on encumbering debt as the "return." The "return on equity" standard, where it is based on cost rather than value (see *ante*, p. 1103), treats equity cost rather than total cost as the "investment" and the net operating income *after* deduction of interest on encumbering debt as the "return." (Baar, *op cit. supra*, 35 Rutgers L.Rev. at p. 790.) Because of the distinction in the manner in which interest on encumbering debt is treated in the two formulations, they ordinarily will reach roughly similar results if the rate of return on comparable investments is similar to the interest rate on the encumbering debt.

While it is conceivable that in extreme circumstances application of the "historical cost" formulation might deny a property owner a fair rate of return, we have no occasion to explore that issue here.

*Natural Gas Co.* (1944) 320 U.S. 591 [88 L.Ed. 333, 64 S.Ct. 281]; see also *Palomar, supra,* 16 Cal.App.4th at p. 487.)

The Yees' extend their argument of denial of substantive due process with the claim that failure of the ordinance to require annual increases in rents equal to changes in the CPI is a per se denial of the right. A similar argument was rejected by the Supreme Court in *Carson Mobilehome Park Owners' Assn.* v. *City of Carson* (1983) 35 Cal.3d 184, 194-195 [197 Cal.Rptr. 284, 672 P.2d 1297]. Respect for *Carson Mobilehome Park Owners' Assn.* requires rejection of Yees' contention contrary to its holding.

In claiming a denial of procedural due process, the Yees argue first that the Ordinance lacks sufficient guidelines to channel the discretion of the Board with respect to the consideration and weighting of the listed factors. In essence, they assert that the Ordinance invites arbitrary and capricious decisions. They argue further that this lack of specificity precludes informed presentation of applications for rent increases because of the lack of notice of what should be included in them. ▮ These arguments, insofar as they relate to the facial constitutionality of a rent control ordinance which includes a nonexclusive list of factors as a guide to determination of rent increases, have been answered and rejected by the Supreme Court in earlier cases binding upon us. (See *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d 129, 168; *Carson Mobilehome Park Owners' Assn.* v. *City of Carson, supra,* 35 Cal.3d at pp. 190-191.) Our decision in the next section of this opinion to remand for a new hearing because the Board's decision is not supported by substantial evidence makes it unnecessary to reach the Yees' argument that they were denied procedural due process by application of the Ordinance because of a lack of decisional guidelines and notice of them. On remand the Board is authorized to adopt the necessary guidelines by interpreting the Ordinance. In addition, as we explained in *Palomar,* the lack of guidelines is unlikely to result in prejudice unless the park owner can point to relevant evidence it was deterred from producing. (16 Cal.App.4th at pp. 481, 490, fn. 4.)

II. *Lack of Substantial Evidence*

▮ The Yees' argue correctly that the decision of the Board rendered on their application for a rent increase is not supported by substantial evidence. We reach this conclusion with the following analysis: (1) The Board is a quasi-judicial administrative agency so that judicial review is by the substantial evidence standard; (2) as an administrative agency, the Board is empowered to interpret the governing ordinance by adopting principles of decision; (3) the principles adopted by the Board here were misapplied so

that the ultimate result it reached is not supported by the evidence before it; (4) it is questionable whether the City may properly attempt to support the Board's result by proffering a theory not relied upon by the Board at the hearing; but (5) in any event, even employing the City's new theory, the result reached by the Board is not supported by the evidence.

A.  *The Substantial Evidence Test of Judicial Review of Administrative Agency Decisions in Context*

The City concedes as it must that the action of the Board is subject to judicial review applying the substantial evidence test. (See *San Marcos Mobilehome Park Owners' Assn.* v. *City of San Marcos* (1987) 192 Cal.App.3d 1492, 1498-1502 [238 Cal.Rptr. 290].) Application of the test inherently requires that the reviewing court first determine the question, "Substantial evidence of what?" In the usual situation, the "what" is to be found in the statute empowering the agency, sometimes as expanded by agency regulations. In the case at bench however, the Escondido Ordinance does not set forth the "what." Rather it merely lists factors to be considered by the Board without specifying their relative impact. Neither party to this appeal points to any regulation of the Board implementing the Ordinance in this regard.

We do not view this lack of specificity in the Ordinance and lack of clarifying regulations as fatal to its implementation. As the agency charged with administering the Ordinance, the Board has the power to interpret it. While frequently exercised by embodiment in regulation, the power to interpret can also be expressed as rules of decision in a concrete case. Here the Board has done just that. While acknowledging consideration of all of the factors specified in the Ordinance, it held for the purpose of ruling on an applicant's first application for a rent increase that the primary consideration is a fair rate of return on the cost of that applicant's equity investment. Whatever may be the validity of this interpretation of the Ordinance once a base year is established, it is an interpretation the Board is free to adopt in the case of the Yees' initial application.[6]

---

[6]The general rule is one of deference to determinations of law by administrative agencies interpreting their governing charters. (See generally, e.g., *Department of Health Services* v. *Superior Court* (1991) 232 Cal.App.3d 776, 782 [283 Cal.Rptr. 546].) We recognize that the character of the Board here differs from traditional administrative agencies. In a sense, the Board members when doffing their legislative hats and donning their quasi-judicial chapeaus depart from their professional role. Appellants have not asserted that the Board is incapable of interpreting the Ordinance, so we do not in this appeal reach the question of whether the unusual character of the agency affects application of the general rule of judicial deference.

### B. *The Substantial Evidence Test Applied to the Rule of Decision Adopted by the Board*

The Board cites *Mayes* v. *Jackson Tp. Rent Leveling Bd.* (1986) 103 N.J. 362 [511 A.2d 589] as stating the return-on-investment standard. *Mayes* holds, "Under [this standard] allowable rent appears to cover at least operating expenses, mortgage interest payments, and a percentage of cash investment." (*Id.* at p. 591.) ■ In the case at bench the Board assumed that operating expenses of each park were equal to the rent charged before any increase. The assumption is fatally flawed in two respects. First, we have found no factual basis in the record which supports it. Second, the record is clear that the Board did not consider mortgage interest payments as required by the formula it adopted.

### C. *The City's Alternative Theory*

In this appeal, the City does not attempt to argue that the Board correctly applied the "return on equity" formula. Instead, it presents two different arguments in support of the Board's decision: (1) that the Board considered all factors stated in the Ordinance in reaching its conclusion; and (2) that a methodology for determining fair rate of return different from the one utilized at the hearing supports the Board's determination.

The first of the City's arguments recites what the Board did but not how it did it. Consideration of a factor alone does not inform of the manner in which the consideration affected the ultimate conclusion. The mere fact that all factors were "considered" in no way guarantees that the ultimate result is constitutionally acceptable.

The City's more substantive second argument asserts that if a different formula than that which the Board utilized at hearing is applied, the rent increases allowed by the Board can be justified as reasonable. This different formula, approved by the United States Supreme Court in *Federal Power Com'n* v. *Hope Natural Gas Co.* (1944) 320 U.S. 591 [88 L.Ed. 333, 64 S.Ct. 281] and *Duquesne Light Co.* v. *Barasch, supra,* 488 U.S. 299, 309 [102 L.Ed.2d 646, 658], first looks to net operating income (or loss), adjusts by eliminating any deduction for interest and then matches the result against the *total* cost of the investment including the encumbering debt to determine if

the return on the total is fair.[7] (See *Palomar Mobilehome Park Assn.* v. *Mobile Home Rent Review Com., supra,* 16 Cal.App.4th at p. 487.)

We seriously question whether the City, in seeking to justify the result reached by the Board, should be permitted to argue a theory different from that employed by the Board at the hearing. We recognize there is language in governing United States Supreme Court cases suggesting that it is the result reached and not the methodology utilized which is relevant. "It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry . . . is at an end. The fact that the method employed to reach that result may contain infirmities is not then important." (*Federal Power Com'n* v. *Hope Natural Gas Co., supra,* 320 U.S. at p. 602 [88 L.Ed. at pp. 344-345].) More recently, the court cited *Hope* in explaining that "an otherwise reasonable rate is not subject to constitutional attack by questioning the theoretical consistency of the method that produced it. . . . The Constitution protects the [property owner] from the net effect of the rate order on its property. Inconsistencies in one aspect of the methodology have no constitutional effect on the [owner's] property if they are compensated by countervailing factors in some other aspect." (*Duquesne Light Co.* v. *Barasch, supra,* 488 U.S. at p. 314 [102 L.Ed.2d at p. 661].)

To the extent that *Hope Natural Gas* and *Duquesne Light* indicate that it is only the bottom-line result which is subject to review, we question whether they reflect a complete understanding of the substantial evidence standard of review as it is applied in California.

■ In most circumstances, the fact that a lower tribunal articulated the wrong reasons in arriving at a correct conclusion is of little consequence. As the California Supreme Court has repeatedly explained, " 'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a

---

[7]As proffered by the City on appeal, the combined calculations for Sunset Terrace and Friendly Hills using the "historical cost" formula are as follows:

| | |
|---|---|
| Acquisition cost | $3,350,000 |
| Less accumulated depreciation | 481,461 |
| Net historic value | 2,868,538 |
| 1988 Loss | -178,836 |
| 1988 Interest expense | 299,301 |
| Operating profit | 120,465 |
| Rate of return ($120,465 divided by $2,868,538) | 4.2% |

wrong reason.' " (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10], quoting *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].) But where a trier of fact's decision is affirmed as being supported by substantial evidence, the appellate court is not ruling that the decision was "correct in law." Given the deference accorded fact finders by appellate courts (see generally *Hurtado* v. *Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019, 1024 [213 Cal.Rptr. 712]),[8] the reviewing court merely concludes that the decision was within a range of permissible results and is therefore not subject to further review. When the trier of fact applies a theory unsupported by substantial evidence, the fact that the same result could have been reached under a correct theory which was supported by the evidence does not permit the judgment to be affirmed. (See, e.g., *Zak* v. *State Farm etc. Ins. Co.* (1965) 232 Cal.App.2d 500, 506 [42 Cal.Rptr. 908] ("Where the record reflects that the trier of fact has not considered a theory under which the evidence is conflicting, the reviewing court cannot rely on that theory to sustain the action of the lower court").) Rather it is the fact finder (here the Board) which must evaluate the evidence in light of a proper theory to determine whether *it* would reach the same result.

We need not resolve the tension between commonly accepted principles of substantial evidence review and the United States Supreme Court's broadly-worded statements of constitutional deference in price and rate regulation cases. Nor need we decide, to the extent an inconsistency exists, whether a federal rule designed to accord deference to administrative agencies in rate setting cases precludes a state from applying its traditional rules in the judicial review of state administrative agency decisions. ▮ Even ignoring any conceptual impediments to the Board's approach on appeal, the administrative determination still lacks support in substantial evidence. The "historical cost" formula argued by the Board on appeal (but not applied at the hearing) results in what the Board concedes is a 4.2 percent return. The only evidence before the Board as to the return on comparable investments indicated a minimum rate of 10 percent. (See *ante*, p. 1103.)

The Board contends, however, that the 4.2 percent rate is fair because income from the Yees' parks should be adjusted to include imputed income equal to appreciation in the value of the properties and the amount of tax benefits realized by the Yees as a result of their ownership. While we need not decide these issues raised here for the first time but not considered by the Board at its hearing, resolution of them will be informative to the Board on remand. We conclude that neither adjustment to actual income is merited.

---

[8]*Hurtado* was disapproved on other unrelated grounds in *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 479, footnote 4 [243 Cal.Rptr. 902, 749 P.2d 339].

In *Palomar Mobilehome Park Assn.* v. *Mobile Home Rent Review Com.*, *supra*, 16 Cal.App.4th 481, we considered a city's similar argument that unrealized appreciation should be treated as imputed income but rejected a simplistic view. "[I]t is not, as the City suggests, merely a matter of calculating the amount of appreciation and dividing by the number of years of ownership to determine the annual yield due to appreciation. Rather, the concept should operate here as it does with regard to stocks such that the potential for appreciation may be shown to affect the rate of return. Thus, an expert testifying as to the rate of return on comparable investments should take into account the potential for appreciation in assessing the sort of investment which is comparable. Presumably, the greater the anticipated appreciation, the lower the rate of return which investors will demand." (*Id.* at p. 489.)

Imputation of tax shelter benefits as income suffers from similar deficiencies. As in the case of appreciation, it is not expressly mentioned in the Ordinance among the factors to be considered and it is extremely difficult to conceive that the Ordinance intends to provide different returns to different owners based solely upon their individual income tax situations or that the ordinance intends that properties acquired before and after the effective date of the Tax Reform Act of 1986 (see, e.g., 28 U.S.C. § 469) are entitled to different rents based solely on the date of acquisition. Fair rate of return relates to return *from* the asset and not return *to* the asset holder. As with appreciation, however, experts who testify concerning the appropriate *rate* of return may consider potential tax benefits as affecting that rate, as in the case of tax-exempt bonds.

■ The Board would also support the 4.2 percent yield produced by its formula presented on appeal in face of the 10 percent applied by the Board at the hearing by reference to the code violations identified by the building department and certain testimony at the hearing complaining of a reduction in the amenities at the two parks. Several reasons require rejection of this approach. First, the Board's decision assumed that the 10 percent rate was fair and reasonable despite the additional findings to which the Board refers on appeal. Second, in order to affect the park owner's rate of return, habitability issues or maintenance problems must be something other than minor, trivial or transitory. The general condition of the two parks here was rated either "good" or "fair" and there is no indication on this record that the identified maintenance problems were significant or substantial. Moreover, to the extent the problems did approach this level, the City makes no attempt to quantify the cost of repair, the diminution in value of the park or even the amount of a rent increase which would have been authorized in the absence of any code violations. There must be some proportionality between the

nature of the transgression and the extent of the penalty. Finally, and perhaps most importantly, the rent increase which was authorized was expressly made contingent on the satisfactory resolution of all code violations. Unless the City can show a continuing pattern or practice of ignoring code violations or other maintenance issues, this would seem to be a sufficient remedy.

## III. *Additional Contentions*

Finally, the Yees assert they are entitled to damages, attorney fees and costs pursuant to Code of Civil Procedure section 1095 and Government Code section 800. Obviously such claims are premature at this juncture when it is unclear the extent to which the Yees will be awarded a rent increase greater than the $27.50 previously approved by the Board. In addition, with respect to the section 1095 claim, the City argues the Yees are guilty of laches. Such a factual question must be presented in the first instance to the trial court. (See, e.g., *Newbury* v. *Civil Service Commission* (1940) 42 Cal.App.2d 258, 261 [108 P.2d 745].)

## DISPOSITION

Judgment reversed. The superior court is instructed to issue a writ directing the Board to conduct a new rent increase hearing consistent with the dictates of this opinion. Each party will bear its own costs.

Froehlich, Acting P. J., and Nares, J., concurred.