[No. B006337. Second Dist., Div. One. Oct. 22, 1985.]

301 OCEAN AVENUE CORPORATION et al.,
Plaintiffs and Respondents, v.
SANTA MONICA RENT CONTROL BOARD, Defendant and Appellant.

150

COUNSEL

Joel Martin Levy and M. Dick Osumi for Defendant and Appellant.

David M. Shell and Craig Mordoh for Plaintiffs and Respondents.

OPINION

HANSON (Thaxton), J.—The Santa Monica Rent Control Board (hereinafter Board) appeals from a judgment declaring portions of the Santa Monica Rent Control Board Regulations (hereinafter Regulations) null and void and enjoining Board from enforcing these Regulations. We affirm in part and reverse in part.

PROCEDURAL HISTORY

The voters of the City of Santa Monica adopted a rent control law at the April 10, 1979 municipal election (hereinafter the 1979 law). The 1979 law established, inter alia, an elected rent control board, ceilings on allowable

rental rates and increases and the financing of the Board through registration fees collected from the landlords.

On June 18, 1983, the Board adopted Regulation 11004 which provided, in pertinent part:

"(a) *Purpose.* The registration fee provided by this regulation shall finance the reasonable and necessary expenses of the Santa Monica Rent Control Board for the fiscal year of July 1, 1983, to June 30, 1984.

"(b) *Amount of Registration Fee.* A landlord shall pay to the Santa Monica Rent Control Board a registration fee in the amount of $72.00 for each rent controlled unit he/she owns in the City of Santa Monica.

"(c) *Deadline for Payment of Registration Fees.*

"(1) A landlord shall pay all registration fees due and owing pursuant to this Regulation on or before August 1, 1983, except insofar as he/she falls within the exceptions delineated in subsection (2) and (3) below. A landlord who does not pay the registration fees by August 1, 1983, shall not increase rents as provided by subsection (d) of this regulation at any time.

". . . . . . . . . . . . . . . . . . . . . . . .

"(d) *Registration Fee Pass-Through.* A landlord may increase the rent on any controlled rental unit for which the registration fee has been paid in accordance with the provisions of this regulation in the amount of six dollars ($6.00) per month, provided that all past registration fees and/or penalty fees have been paid as well. The rent increase provided by this subsection may be implemented on September 1, 1983, and must be terminated on August 31, 1984. . . . Such rent increases shall not extend beyond August 31, 1984, and shall not exceed the amount of the registration fees paid by the landlord. The registration fee pass-through shall not be considered part of the rent in calculating the rent increase to which a landlord is entitled pursuant to the General Adjustment.

". . . . . . . . . . . . . . . . . . . . . . . .

"(f) *Delinquent Registration Fees.* If a landlord does not pay the registration fees by August 1, 1983, or within thirty (30) days of lapse of an exemption or fee waiver, whichever is sooner, then:

"(1) A late charge shall be assessed in an amount equal to five percent (5%) of the unpaid balance for each property including the unpaid balance

remaining from unpaid registration fees and late fees from prior years, for each month after the due date, until the fee is paid.

"(2) That landlord may not increase rent for any controlled rental unit pursuant to any general or individual rent adjustments for a period of ninety (90) days after the payment of all late registration fees and late charges for the unit.

"(3) No petition, application, claim or request shall be accepted from any landlord, and no hearing or other proceeding shall be scheduled or take place on any such petition, application, claim or request until the landlord has paid the registration fees for all of his/her controlled rental units in the City of Santa Monica."

On July 14, 1983, the Board adopted Regulation 3005 which provided, in pertinent part:

"(c) *Restrictions on Landlords' Entitlement to General Adjustment.* A landlord shall not increase rents or serve a notice attempting to increase rents pursuant to this section if any of the following circumstances exist:

"(1) The landlord has not properly registered the rental unit for which the rent increase is sought, including executing the registration form under penalty of perjury . . . .

"(2) The landlord has not paid each of the registration fees provided for in sections 11000, 11001, 11002, 11003, and 11004 of these regulations, including any accumulated late charges.

". . . . . . . . . . . . . . . . . . . . .

"(4) The landlord is not in compliance with any provision of the Santa Monica Rent Control Charter Amendment or the regulations promulgated thereunder."

On July 27, 1983, 301 Ocean Avenue Corporation, Joseph Baur, Elaine Dobrin, David Partovi, Asim Altamimi, Akshai Rundral, Helen McClellan, Walter Bills and Gilbert Perea (hereinafter Plaintiffs) filed a petition for writ of mandate and complaint for declaratory and injunctive relief seeking to invalidate several of the Board's Regulations. Plaintiffs are owners of real property subject to the Board's regulation.

On November 9, 1983, the trial court filed its judgment declaring Regulations 3005, subdivision (c)(2) and 11004, subdivisions (f)(1) and (2) null

and void. The judgment enjoined the Board from enforcing these Regulations.

The Board filed its notice of appeal on February 8, 1984. While this appeal was pending, the 1979 law was amended by the voters of the City of Santa Monica at the November 6, 1984 municipal election (hereinafter the 1984 law).

### ISSUES

On appeal, the Board contends that the trial court erred since it had the express and/or implied power to issue the Regulations in question under both the 1979 law and the 1984 law. Plaintiffs, on the other hand, contend that the 1984 law is invalid.

### DISCUSSION

### I.

As noted above, the 1979 law was amended after the trial court issued its judgment. ■ "Under settled principles, the version of the ordinance in force at present is the relevant legislation for purposes of this appeal." (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306, fn. 6 [138 Cal.Rptr. 53, 562 P.2d 1302]; see also *Building Industry Assn.* v. *City of Oxnard* (1985) 40 Cal.3d 1, 3 [218 Cal.Rptr. 672, 706 P.2d 285].) We will therefore gauge the validity of the Regulations in question against the 1984 law.

■ "The scope of our review of an administrative agency's regulations is limited: we consider whether the challenged provisions are consistent and not in conflict with the enabling statute and reasonably necessary to effectuate its purpose. [Citation.] As a general proposition, administrative regulations are said to be 'shielded by a presumption of regularity' [citation] and presumed to be 'reasonable and lawful.' [Citation.] The party challenging such regulations has the burden of proving otherwise. [Citation.]" (*Fox* v. *San Francisco Residential Rent etc. Bd.* (1985) 169 Cal.App.3d 651, 655 [215 Cal.Rptr. 565], italics omitted.)

■ The pertinent portions of the 1984 law are:

"Section 1800. *Statement of Purpose.*

"A growing shortage of housing units resulting in a low vacancy rate and rapidly rising rents exploiting this shortage constitute a serious housing

problem affecting the lives of a substantial portion of those Santa Monica residents who reside in residential housing. In addition, speculation in the purchase and sale of existing residential housing units results in further rent increases. These conditions endanger the public health and welfare of Santa Monica tenants, especially the poor, minorities, students, young families, and senior citizens. The purpose of this Article, therefore, is to alleviate the hardship caused by this serious housing shortage by establishing a Rent Control Board empowered to regulate rentals in the City of Santa Monica so that rents will not be increased unreasonably and so that landlords will receive no more than a fair return.

"In order to accomplish this purpose, this Article provides for an elected Rent Control Board to ensure that rents are at a fair level by requiring landlords to justify any rents in excess of the rents in effect one year prior to the adoption of this Article.

"· · · · · · · · · · · · · · · · · · · · · · ·

"Through this Article, the City exercises its police power in order to address the serious housing problem recognized in the original enactment of this Rent Control Law in 1979 and still existing in 1984. The 1984 Amendment to the Rent Control Law is intended to clarify the law and ensure that the Rent Control Board possesses adequate and independent authority to carry out its duties.

"· · · · · · · · · · · · · · · · · · · · · · ·

"Section 1803. *Permanent Rent Control Board.*

"· · · · · · · · · · · · · · · · · · · · · · ·

"*(f)* POWERS AND DUTIES: The Board shall have the following powers and duties:

"· · · · · · · · · · · · · · · · · · · · · · ·

"(2) Require registration of all controlled rental units under Section 1803(q).

"· · · · · · · · · · · · · · · · · · · · · · ·

"(6) Hire and pay necessary staff, including hearing examiners and personnel to issue orders, rules and regulations, conduct hearings and charge fees as set forth below.

"       . . . . . . . . . . . . . . . . . . . . . . . .

"(15) Charge and collect registration fees, including penalties for late payments.

"(g) RULES AND REGULATIONS: The Board shall issue and follow such rules and regulations, including those which are contained in this Article, as will further the purposes of the Article.

"       . . . . . . . . . . . . . . . . . . . . . . . .

"(n) FINANCING: The Board shall finance its reasonable and necessary expenses by charging landlords annual registration fees in amounts deemed reasonable by the Board. The Board may direct that all or part of such fees may be passed through from landlords to tenants and may establish applicable conditions and procedures. The Board is also empowered to request and receive funding when and if necessary from any available source for its reasonable and necessary expenses.

"       . . . . . . . . . . . . . . . . . . . . . . . .

"(q) REGISTRATION: Within sixty (60) days after the adoption of this Article, the Board shall require the registration of all controlled rental units, which shall be re-registered at times deemed appropriate by the Board.

"       . . . . . . . . . . . . . . . . . . . . . . . .

"Section 1805. *Individual and General Adjustment of Ceilings on Allowable Rents.*

"(a) GENERAL ADJUSTMENT. The Board may, after holding those public hearings prescribed by Section 1803(g), set and adjust upward or downward the rent ceiling for all controlled rental units in general and/or for particular categories of controlled rental units deemed appropriate by the Board. Such an adjustment, however, need not take effect immediately, and the Board may decide that new rent ceilings shall not take effect until some reasonable date after the above-stated time periods.

"(b) ANNUAL GENERAL ADJUSTMENT. Each year the Board shall generally adjust rents as follows:

"(1) Adjust rents upward by granting landlords a utility and tax increase adjustment for actual increases in the City of Santa Monica for taxes and utilities.

"(2) Adjust rents upward by granting landlords a maintenance increase adjustment for actual increases in the City of Santa Monica for maintenance expenses.

"(3) Adjust rents downward by requiring landlords to decrease rents for any actual decreases in the City of Santa Monica for taxes.

"In adjusting rents under this subsection, the Board shall adopt a formula of general application.

". . . . . . . . . . . . . . . . . . . . . . . .

"(h) No landlord shall increase rent under this Article if the landlord:

"(1) Has failed to comply with any provisions of this Article and/or regulations issued thereunder by the Board, including the provisions requiring the payment of registration fees and registration penalties.

"(2) Has failed to comply substantially with any applicable state or local housing, health or safety law."

It is clear that the 1984 law expressly authorizes the Board to collect registration fees as a source of its financing and to impose penalties for nonpayment (§ 1803, subds. (f)(2), (f)(6), (f)(15) and (n)). ■ The remaining issue is whether the Regulations in question are reasonably necessary to the 1984 law's purpose. ■ If the Regulations' necessity is reasonably debatable, we cannot second-guess the legislative determination. (*Consolidated Rock Products Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d 342].)

■ Regulations 3005, subdivision (c)(2) and 11004, subdivision (f)(1) provide for a penalty of 5 percent per month on any unpaid registration fee and prohibit a landlord from increasing a tenant's rent, including the annual general adjustment, until such registration fees and penalties are paid. These harsh penalties are related to the effective collection of the registration fees which fund the Board's activities. The Board, in turn, is the agency that is

empowered to attain the goals set forth in the 1984 law's statement of purpose.[1]

However, we find that Regulation 11004, subdivision (f)(2) is not reasonably necessary to achieve the 1984 law's purpose. This Regulation prohibits a landlord from increasing the rental price of a controlled unit for ninety days after payment of all registration fees and late charges for that unit. A provision of this type is nothing more than the Board attempting to flex its muscles in front of a badly beaten opponent. Once a property owner has paid the registration fee plus the harsh penalty of 5 percent per month[2] no further purpose can be served by making him wait three additional months before he can implement the automatic annual rent increases. The amount of these increases are calculated by the Board and take into account such factors as increases in utility, tax and maintenance expenses. (§ 1805, subd. (6) of the 1984 law.) To deny these increases to a landlord who has cured his delinquency by paying a 5 percent per month penalty would run counter to the 1984 law's purpose of limiting landlord's income to "no more than a fair return." (§ 1800.)

We therefore affirm that portion of the trial court's judgment which declares this Regulation null and void.[3]

## II.

The Plaintiffs contend that the 1984 law is invalid since the "constitutional facts" upon which it relies no longer exist. (See *Birkenfeld* v. *City*

---

[1] Plaintiffs contend that it is not "necessary" to collect the registration fees from the landlords since section 1803, subdivision (n) of the 1984 law empowers the Board "to request and receive funding when and if necessary from any available source for its reasonable and necessary expenses." Plaintiffs argue that the Board should seek its funding from the Santa Monica City Council. Since the Board is specifically permitted to finance its operations from the registration fees it collects from landlords, we cannot command the Board to seek funds from the public fisc.

[2] We deem this to be a harsh penalty since it is the equivalent of more than 60 percent per year when one considers that each month's interest payment is based on the previous month's principal balance plus all previously unpaid interest amounts. One need only reflect for a moment to realize the furor that would be raised if a lending institution were to charge similar rates.

[3] This 90-day penalty was first introduced in 1980 with Regulation 11001, subdivision (c)(2). It was included in the annual registration fee Regulations for the fiscal years July 1, 1981-June 30, 1984. (Regs. 11002-11004, respectively.) It was omitted from the registration fee Regulation for the fiscal year July 1, 1984-June 30, 1985. (Reg. 11005.) It was reenacted in substantially the same language in the registration fee Regulation for the fiscal year July 1, 1985-June 30, 1986. (Reg. 11006.) Of these Regulations, only Regulation 11004 is before this court. However, we are confident that the Board will not enforce the similarly deficient provisions contained in Regulation 11006, subdivision (f)(2).

*of Berkeley* (1976) 17 Cal.3d 129 [130 Cal.Rptr. 465, 550 P.2d 1001].)
While the Plaintiffs do not challenge the fact that a housing shortage may
still exist in the City of Santa Monica, they assert that it is inconceivable
that rents are rising rapidly since rent increases have been carefully moni-
tored for the last six years.

The deficiency in the Plaintiffs' argument is twofold. First, the Plaintiffs
do not explain why a housing shortage alone would not be a sufficient basis
for the exercise of the city's police power. Second, there can be no doubt
that rental rates would increase to market level once the artificial barriers
are removed. This condition coupled with a perceived shortage in housing
is what led to the passage of the rent control law in the first place.

### III.

Having determined that the 1984 law expressly permits two of the
three Regulations invalidated by the trial court, we must next decide the
fate of those landlords who are delinquent in the payment of their registra-
tion fees. In order to resolve this issue, we must first determine whether the
trial court was correct in its ruling under the 1979 law.

The reasoning behind the trial court's ruling was that the 1979 law pro-
vided the Board with neither the express nor the implied authority to impose
penalties for nonpayment of the registration fees.

The pertinent portions of the 1979 law are:

"Section 1803. *Permanent Rent Control Board.*

"
. . . . . . . . . . . . . . . . . . . . . . .

"(f) POWERS AND DUTIES: The Board shall have the following powers
and duties:

"
. . . . . . . . . . . . . . . . . . . . .

"(2) Require registration of all controlled rental units under § 1803(q).

"
. . . . . . . . . . . . . . . . . . . .

"(6) Hire and pay necessary staff, including hearing examiners and per-
sonnel to issue orders, rules and regulations, conduct hearings and charge
fees as set forth below.

"· · · · · · · · · · · · · · · · · · · · · · · ·

"(n) FINANCING: The Board shall finance its reasonable and necessary expenses by charging landlords annual registration fees in amounts deemed reasonable by the Board.

"· · · · · · · · · · · · · · · · · · · · · · · ·

"(q) REGISTRATION: Within sixty (60) days after the adoption of the Article, the Board shall require the registration of all controlled rental units, which shall be re-registered at times deemed appropriate by the Board. . . . [N]o landlord who has failed to register properly shall at any time increase rents for a controlled rental unit until such units are properly registered.

"· · · · · · · · · · · · · · · · · · · · · · · ·

"[Section 1805] . . .

"(h) No landlord shall increase rent under this Section if the landlord:

"(1) Has failed to comply with any provisions of this Article and/or regulations issued thereunder by the Board, . . ."

The trial court correctly concluded that the 1979 law did not expressly authorize the *penalties* contained in the Regulations in question. However, that portion of Regulation 3005, subdivision (c)(2) which addresses itself to the failure to pay the registration fees (as opposed to the late charges) is expressly authorized under section 1803, subdivisions (f)(2), (g), (n), (q) and section 1805, subdivision (h)(1).

The Board contends that it had the implied power to impose penalties for nonpayment of registration fees. The Board's reliance on *Atlas Roofing Co. v. Occupational Safety Comm'n* (1977) 430 U.S. 442 [51 L.Ed.2d 464, 97 S.Ct. 1261] is misplaced. In that case, the United States Supreme Court upheld an administrative agency's power to impose civil penalties for violations of the Occupational Safety and Health Act of 1970 against a challenge that this violated the right to a jury trial as guaranteed by the Seventh Amendment to the United States Constitution. However, unlike the case at bench, the enabling legislation specifically provided for these penalties.

We therefore conclude that the trial court correctly concluded that the 1979 law did not give the Board the implied power to impose penalties for nonpayment of the registration fees.

## IV.

In summation, we conclude that the 1984 law expressly permits Regulations 3005, subdivision (c)(2) and 11004, subdivision (f)(1). Accordingly, we reverse the judgment as to these Regulations. Since we have concluded that Regulation 11004, subdivision (f)(2) is not reasonably related to the 1984 law's purpose, we affirm the judgment as to this Regulation.

The penalties imposed on the Plaintiffs for nonpayment of the registration fees prior to the effective date of the 1984 law (Dec. 3, 1984) must fall since they were imposed under invalid Regulations. However, the registration fees themselves were valid and would still be owed by landlords who have not paid them.[4]

### DISPOSITION

The trial court's judgment is reversed as to Regulations 3005, subdivision (c)(2) and 11004, subdivision (f)(1), and affirmed as to Regulation 11004, subdivision (f)(2).

Spencer, P. J., and Lucas, J., concurred.

A petition for a rehearing was denied November 20, 1985, and respondents' petition for a review by the Supreme Court was denied January 15, 1986.

---

[4]We express no opinion as to whether collection of any of these past registration fees are time-barred by the applicable statute of limitations.