[No. B135654. Second Dist., Div. One. Oct. 30, 2000.]

VAN WAGNER COMMUNICATIONS, INC., Plaintiff, Cross-defendant and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent;
ACP SANTA MONICA, LLC, Intervener, Cross-complainant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

500

**COUNSEL**

Stephan, Oringher, Richman & Theodora, George James Stephan, Harry W. R. Chamberlain II, Robert M. Dato and Efrat M. Cogan for Plaintiff, Cross-defendant and Appellant.

James K. Hahn, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Michael L. Klekner, Deputy City Attorney, for Defendant and Respondent.

Allen, Matkins, Leck, Gamble & Mallory, Gregory G. Gorman and Rebecca G. Gundzik for Intervener, Cross-complainant and Respondent.

**OPINION**

**ORTEGA, J.**—This appeal concerns the revocation of appellant's permit to erect a billboard on a corner lot in West Los Angeles. The appeal presents a

question of law concerning the applicability of a city ordinance requiring a 600-foot space between off-site signs[1] of a particular size "that are located on the same side of the same street." (L.A. Mun. Code, § 91.6218.4, subd. (4) (spacing ordinance).)[2] In this case, the proposed sign would be within 600 feet of an existing sign which is around the corner and on a different street. We conclude, as a matter of law, that because the two signs are located on different streets, the spacing ordinance does not apply to these particular signs. Accordingly, the trial court erred in upholding the administrative decision to revoke appellant's permit. We reverse in part and affirm in part with directions.

## ADMINISTRATIVE PROCEEDINGS

On July 1, 1996, the City of Los Angeles Department of Building and Safety (Department) issued a permit authorizing appellant Van Wagner Communications, Inc., to erect the disputed off-site sign on the northeast end (at the intersection of Bentley Avenue and Little Santa Monica Boulevard) of a corner lot. Around the corner and diagonally across from the proposed sign, on the southwest end of the same lot, is an existing billboard that fronts Sepulveda Boulevard. The issue is whether Van Wagner's permit was issued in violation of the 600-foot spacing ordinance for signs of a particular size "that are located on the same side of the same street." (§ 91.6218.4, subd. (4).)

### A. First Administrative Appeal

A shopping center tenant who objected to Van Wagner's proposed sign, Koo Koo Roo, Inc., filed an administrative appeal challenging Van Wagner's permit. After the Department considered and rejected Koo Koo Roo's appeal, the matter went before the City of Los Angeles Board of Building and Safety Commissioners (Board). After a public hearing attended by many residents who also opposed Van Wagner's permit, the Board concluded that the "number and proxim[ity] of the off-site signs are onerous and should not be allowed, and the permit therefore, was issued in error." On the other hand, however, the Board stopped short of revoking the permit. The Board concluded, "Since both signs are technically viewed from different streets,

---

[1] An "off-site sign" is defined in the Los Angeles Municipal Code as: ". . . A sign which displays any message directing attention to a business, product, service, profession, commodity, activity, event, person, institution or any other commercial or noncommercial message, which is generally conducted, sold, manufactured, produced, offered or occurs elsewhere than on the premises where such sign is located. . . ." (L.A. Mun. Code, § 91.6203.)

[2] Unless otherwise indicated, all further statutory references are to the Los Angeles Municipal Code.

the argument has been made justifying the Department[']s decision to issue the permit. Therefore, no abuse of discretion by the Department is found."

## B. *Revocation of the Permit*

Although not required by the Board to do so, the Department nevertheless decided to revoke Van Wagner's permit. By letter dated October 22, 1996, the Department notified Van Wagner of its intent to revoke the permit under section 98.0601, subdivision (a)(2), which states: "The Department shall have the authority to revoke any permit . . . whenever such action was granted in error or in violation of other provisions of the Code and conditions are such that the action should not have been allowed."

## C. *Vested Rights Determination by the Department*

Upon receiving the notice of revocation, Van Wagner asked the Department to reconsider its decision and find that Van Wagner had acquired a vested right to the permit by virtue of having commenced construction in good faith reliance on the permit. Van Wagner submitted invoices allegedly representing expenditures of over 60 percent of the total construction costs. The Department ruled in Van Wagner's favor, finding that Van Wagner had acquired a vested right to the permit.

## D. *Second Administrative Appeal*

Koo Koo Roo then brought a second administrative appeal to the Board, challenging the Department's right to reconsider a matter that had already been decided by the Board. Koo Koo Roo further protested the lack of a hearing on Van Wagner's vested rights claim.

At the second Board hearing in this case, the mayor's representative appeared to express the mayor's "public[] object[ion] to the authorization of this sign." The representative stated: "The neighborhoods have articulated to the Mayor their objection to this, and so has the council office, and the Mayor joins with them in concurring with that objection."

Also appearing at the second Board hearing was Colin Kumabi,[3] the departmental employee who had worked on Van Wagner's permit application. Kumabi, who had spoken at Koo Koo Roo's first administrative appeal, explained that one of his prior statements was being taken out of context by the Board. Kumabi's prior statement was (according to Robert Burke for

---

[3]Kumabi's name is also spelled Kumabe elsewhere in the record.

Koo Koo Roo) that if Kumabi had known about the existing sign on the site, he would not have issued the permit to Van Wagner for a second sign. At Koo Koo Roo's second administrative appeal, Kumabi explained that his prior "statement was taken out of context." Kumabi explained that his statement was strictly in response to a hypothetical question concerning two parallel signs that were primarily viewed from the same street. Kumabi stated that these two signs, however, are neither parallel nor primarily viewed from the same street. According to Kumabi, the Department staff recommendation was that the permit was not issued in error.

Richard Holguin, chief of the Department's engineering bureau, concurred with Kumabi that the Department had properly issued the permit. According to Holguin, the Department's long-standing policy was to interpret the 600-foot spacing ordinance as being inapplicable to signs that front two different streets of a corner lot. Holguin stated, "Because of our [Department's] long-standing guidelines, the way that we enforce this section [(§ 91.6218.4, subd. (4))], you could end up with these corner sites that have these advertising signs on both streets and not consider them to be on the same street." Holguin also stated that the Department knew of the existing sign on the lot when it issued the permit: "Yeah, we went out and we made the determination that, yeah, there's another sign, but it's not within 600 feet because it was on a different street." Holguin further clarified: "What we did is that in this particular instance, each sign was treated separately. We made a determination that the existing sign serviced Sepulveda Boulevard. [¶] . . . [¶] . . . Then this new sign was going to service, if you will, Santa Monica Boulevard. It was a different street. The 600-feet spacing did not enter into it."

Ron Cipriani, a Van Wagner employee who "sat on [the] study when they wrote the [spacing] ordinance in 1986," told the Board that the city's sign ordinances were written to permit a maximum of "four signs within 150 f[eet] of an intersection." The 150-foot intersection spacing ordinance is a radius-based ordinance that allows, "[n]o more than four off-site signs [to] be located at the intersection of two or more streets when such signs are located within 150 feet of the intersection of two street frontages." (§ 91.6218.2, subd. (4).) The 600-foot spacing ordinance, however, is not radius based. Cipriani explained that the 600-foot spacing ordinance "allows you to build on a corner lot on both streets where that corner lot fronts on and is not considered the same side of the same street. We went through this for many weeks in our hearings before the planning committee and the council, and that was one of the interpretations of the ordinance, was that spacing is on the same side of the street, not radius."

The Board rejected Holguin's and Kumabi's statements that according to the Department's long-standing interpretation of the spacing ordinance, Van Wagner's permit was not issued in violation of the 600-foot spacing ordinance. The Board made the following findings, among others: (1) the permit was invalid from the date of its issuance; (2) Van Wagner acted in bad faith by failing to disclose the existence and location of the existing sign on its permit application; (3) due to its expertise in the sign industry, Van Wagner knew the permit was invalid when it was issued; (4) Van Wagner did not act in good faith reliance on the permit when it commenced construction; and (5) the Department erred and abused its discretion in finding that Van Wagner had acquired a vested right to the permit.

E. *Revocation of the Permit*

Based on the Board's findings that the Department had erred and abused its discretion in allowing Van Wagner to keep its permit, the Department notified Van Wagner on April 15, 1997, that the permit was revoked.[4] Van Wagner filed a civil action seeking review of the Board's ruling.

JUDICIAL PROCEEDINGS

A. *Administrative Mandamus and Traditional Mandamus*

On May 29, 1997, Van Wagner filed a pleading entitled, "Petition for writ of mandate and/or prohibition; administrative mandamus; and complaint for inverse condemnation."[5] With regard to the revocation of its permit, Van Wagner alleged, "The Board's decision that the Department erred in issuing the . . . permit is contrary to law in that the Permit complies with all requirements of the City's sign code, including the space requirements . . . , and Departmental policy and interpretation of same, which has been uniformly applied since adoption of the Code."

---

[4]We granted Van Wagner's request to take judicial notice of the April 15, 1997, letter from the Department notifying Van Wagner of the permit revocation.

[5]The city points out in its respondent's brief that the appropriate vehicle for relief in this case is by way of administrative mandamus under Code of Civil Procedure section 1094.5, not traditional mandamus under Code of Civil Procedure section 1085. (We note that, "It is often unclear whether judicial review should be sought by administrative mandamus, ordinary mandamus, or declaratory relief. [¶] . . . It is often difficult to decide which type of mandamus to use because of the problematic distinction between quasi-legislative and quasi-judicial action . . . , especially in local land use planning and environmental decisions." (8 Witkin, Cal. Procedure (4th ed. 1997) Extraordinary Writs, § 271, p. 1072.).) Probably from an abundance of caution, Van Wagner pleaded both forms of relief in its complaint. We agree with the city that "the proper remedy is that provided by CCP § 1094.5." Accordingly, we affirm the order granting the city's motion for judgment on the pleadings with regard to the traditional mandamus cause of action.

On February 16, 1999, Los Angeles County Superior Court Judge David P. Yaffe heard Van Wagner's petition for administrative mandamus. The parties informed Judge Yaffe that Koo Koo Roo had dropped its opposition to the sign, but that the city remained opposed to it.

Van Wagner pointed out that contrary to the Board's finding that Van Wagner had misled the Department about the existence of another sign on the same lot, the administrative record shows (through Holguin's testimony) that the Department knew of the existing sign when it issued the permit. Van Wagner also emphasized to Judge Yaffe that two Department employees (Holguin and Kumabi) had defended the issuance of the permit based on the Department's long-standing interpretation that the 600-foot spacing ordinance is inapplicable to signs located on different streets.

Judge Yaffe responded that the Board was authorized to interpret the 600-foot spacing ordinance to prohibit signs that, even though located on different streets, are visible from the same side of the same street. Judge Yaffe concluded that because the existing sign (on Sepulveda Boulevard) is tilted at such an angle that it is visible to eastbound motorists on Little Santa Monica Boulevard, Van Wagner's sign (on Little Santa Monica Boulevard) may not be placed within 600 feet of the existing sign. Judge Yaffe explained: ". . . What it seems to me the board did was it rejected the determination by its subordinate people that these signs were not on the same street, and the board held, yes, if you put a sign at something approaching a 45-degree angle at an intersection, it can darned well be viewed by southbound traffic [on Sepulveda Boulevard] and by eastbound traffic [on Little Santa Monica Boulevard], and if it can be reviewed—if it can be viewed by the same eastbound traffic that views the other sign[, then] for the purposes of the ordinances, they're on the same street."

Regarding the Board's rejection of Van Wagner's vested rights claim, Judge Yaffe found it questionable whether Van Wagner had commenced constructing the sign in good faith reliance on the permit: "[T]he issue . . . as I saw it . . . was . . . whether Van Wagner proceeded with its construction of the sign in reliance upon the fact that it had a final permit, or whether Van Wagner was rushing to construct the sign because it knew darned well that the issuance was subject to appeal and it wanted to get its rights vested before the appeal could be determined."[6]

Judge Yaffe denied Van Wagner's petition for administrative mandamus (Code Civ. Proc., § 1094.5). Judge Yaffe granted the city's motion for

---

[6]Judge Yaffe took the position that Van Wagner's permit was never finally issued because it was issued subject to appeal. Accordingly, Judge Yaffe called the permit revocation a

judgment on the pleadings on the traditional mandamus cause of action (Code Civ. Proc., § 1085). He then transferred the case to Los Angeles County Superior Court Judge Edward A. Ferns, who ruled on the claims discussed below.[7]

### B. *Inverse Condemnation and Estoppel*

In its third cause of action, for inverse condemnation, Van Wagner seeks compensation for the lost revenue resulting from the delays associated with the administrative and judicial proceedings, and the revocation of its permit. In its fourth cause of action, for "Inverse Condemnation—Estoppel," Van Wagner seeks to recover the costs incurred in building the sign in good faith reliance on the permit.

The city successfully moved for judgment on the pleadings before Judge Ferns on both claims. On appeal, Van Wagner contends it is entitled to a trial on its inverse condemnation claim, because an administrative mandate proceeding is no substitute for such a trial. Regarding the estoppel claim, we conclude the issue is now moot given our decision to reinstate the permit.

### C. *ACP's Cross-complaint in Intervention*

Van Wagner had leased the site for the disputed billboard from ACP Santa Monica, LLC. Once the permit was revoked, Van Wagner and ACP became embroiled in a dispute over the $100,000 that Van Wagner had paid to ACP upon receiving the permit. (The lease also specified that upon completion of the billboard, Van Wagner was to pay ACP $10,000 per year for the first

---

permit denial, a position adopted by the city. We disagree that the permit was never issued. As Van Wagner points out in its respondent's brief, the Los Angeles Municipal Code does not impose a time limit for challenging a billboard permit, which may be revoked by the Department or the Board *at any time* under section 98.0601, subdivision (a)(2). Given the absence of a time limit for challenging the issuance of a sign permit, no permit would ever be deemed finally issued under Judge Yaffe's interpretation.

We also note that section 98.0602, subdivision (a) provides that permits "shall expire on the one hundred and eightieth (180) day from date of issuance if the work permitted thereunder has not been commenced . . . ." Accordingly, Van Wagner could not have waited indefinitely to see if an appeal would be filed before beginning construction. The inference that Van Wagner had hastily commenced construction to establish a vested right to an allegedly unlawful permit is not the sole inference that may be drawn from the facts. In any event, given our conclusion that the 600-foot spacing ordinance does not apply to this case, it must necessarily follow that the record is insufficient to support the finding that Van Wagner had acted in bad faith.

[7]Van Wagner filed an earlier appeal and writ petition from Judge Yaffe's order on the administrative mandamus and traditional mandamus claims. We dismissed both, without prejudice, as premature. (*Van Wagner Communications, Inc. v. City of Los Angeles* (May 6, 1999, B130208, B131137) [nonpub. opn.].)

10-year period following completion, and $12,000 per year for the second 10-year period.) ACP, seeking to keep the initial $100,000 payment despite the permit revocation, filed a cross-complaint in intervention for declaratory relief.[8]

ACP moved for summary judgment before Judge Ferns, contending the $100,000 lump-sum payment constituted a nonrefundable deposit. ACP contended the deposit was not subject to the lease's rent reimbursement and cancellation provisions, even though the $100,000 payment was specifically called "rent" in the lease agreement. Judge Ferns granted ACP's motion. Given our determination that the permit should not have been revoked, we need not reach Van Wagner's contentions regarding the summary judgment ruling and the award of attorney fees to ACP. Once the permit is reinstated, the controversy over the $100,000 payment will become moot.

## ISSUES

The relevant issues on appeal are whether the 600-foot spacing ordinance applies to the existing sign and Van Wagner's proposed sign, and whether Van Wagner may seek inverse condemnation damages for the loss of revenue suffered during the administrative hearing process.

## DISCUSSION

### I

### The Spacing Ordinance

We begin by considering the proper standard of review for interpreting the spacing ordinance. "A person aggrieved by an agency determination has a right to independent judicial review of questions of law, such as those dealing with the interpretation and application of statutes or judicial precedents. [Citations.] The courts, in exercising independent judgment, must give appropriate deference to the agency's interpretation. [Citations.] However, the court must conclusively state the true meaning, and if the

---

[8]Van Wagner filed a cross-complaint for declaratory relief against ACP and the city. With regard to ACP, Van Wagner sought a ruling that the $100,000 lump-sum payment constituted "rent" that is subject to the lease's rent reimbursement and cancellation provisions. As for the city, Van Wagner sought a ruling that it had acquired a vested right to the permit.

In a prior appeal, we affirmed the order of dismissal for the city based on the sustaining without leave to amend of the City's demurrer to Van Wagner's cross-complaint. (*Van Wagner Communications, Inc. v. City of Los Angeles* (Jan. 21, 1999, B118276) [nonpub. opn.].) We also reversed without prejudice the summary judgment for ACP on ACP's cross-complaint in intervention and Van Wagner's cross-complaint for declaratory relief.

Legislature attempted to vest in a commission final authority to pass on questions of law, 'the act would clearly be unconstitutional.' [Citation.]" (9 Witkin, Cal. Procedure, *supra*, Administrative Proceedings, § 111, p. 1156.)

In *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1 [78 Cal.Rptr.2d 1, 960 P.2d 1031], the California Supreme Court discussed the degree of deference owed to administrative interpretations of a statute.[9] The degree of deference that is due is "fundamentally *situational*. A court assessing the value of an interpretation must consider a complex of factors material to the substantive legal issue before it, the particular agency offering the interpretation, and the comparative weight the factors ought in reason to command." (*Yamaha Corp. of America, supra*, 19 Cal.4th at p. 12.)

One factor the court may consider is whether the agency offering the interpretation had authored the ordinance under review. ██ In this case, the answer is no. The Board was not involved in drafting the spacing ordinance.[10] Accordingly it would be inappropriate to assume in this case that the Board is " 'intimately familiar with' " the spacing ordinance and " 'sensitive to the practical implications of one interpretation over another' " by virtue of authorship. (*Yamaha Corp. of America v. State Bd. of Equalization, supra*, 19 Cal.4th at p. 12.)

██ Another factor the court may consider is whether the agency's interpretation is one that was consistently maintained and of long standing. (*Yamaha Corp. of America v. State Bd. of Equalization, supra*, 19 Cal.4th at p. 13.) ██ Again, the answer is no. The administrative record shows that the Board's interpretation of the spacing ordinance was squarely at odds with the Department's long-standing practice of allowing signs within 600 feet of one another if they are located on different streets of a corner lot.

The administrative record also shows that the Board's two rulings are inconsistent with each other. Initially, the Board agreed with the Department that the ordinance does not apply because the signs are located on different streets. It was only after Koo Koo Roo filed a second appeal and galvanized major political opposition to the sign (including opposition from the mayor's

[9]The fact that we are reviewing a local ordinance rather than a state statute does not affect the standard of review. "We interpret ordinances by the same rules applicable to statutes. [Citation.]" (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70 Cal.App.4th 281, 290 [82 Cal.Rptr.2d 569].)

[10]The only person involved in the administrative proceedings who claimed to have had a part in drafting the ordinance was Ron Cipriani, a Van Wagner employee who said he "sat on [the] study when they wrote the ordinance in 1986." According to Cipriani, the ordinance was not intended to apply to the signs at issue in this appeal because they are not on the same side of the same street.

office) that the Board concluded the ordinance was applicable to these two signs. In our view, the Board's inconsistent rulings do not aid in the interpretation of the ordinance because " '[a] vacillating position . . . is entitled to no deference[.]' " (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 13.)

In this case, we can identify no factors that would require the court to defer to the Board's determination that the permit was issued in violation of the spacing ordinance. We conclude the interpretation of the spacing ordinance is, on this record, solely a judicial function. Given that we are as capable of interpreting the ordinance as is the trial court, and that no exercise of discretion is involved, we will proceed to interpret the ordinance rather than remand the matter for the trial court to do so.

The ordinance requires a 600-foot space between signs of a particular size "that are located on the same side of the same street." (§ 91.6218.4, subd. (4).) In this case, it is undisputed that two signs would be within 600 feet of one another, but that the existing sign is on Sepulveda Boulevard and the proposed sign would be at the intersection of Bentley Avenue and Little Santa Monica Boulevard. Other than the 600-foot spacing ordinance, there is no other ordinance that would arguably prohibit the proposed sign from being erected at this site.[11]

The only way to prohibit the proposed sign based on the 600-foot spacing ordinance is to conclude the signs are on "the same side of the same street" because they are both visible to eastbound traffic on Little Santa Monica Boulevard. The ordinance, however, says nothing about signs that are visible from the same side of the same street. We decline to rewrite the ordinance in that fashion. The ordinance unambiguously states that it applies only to signs that are located on the same side of the same street, which these signs are not.

▮ "When, as here, ' " 'statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.' " ' [Citation.]" (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) ▮ Had the city wished to regulate the spacing of signs situated on different streets but visible to motorists on an adjacent street, it could have done so. (See *ibid.*) In fact, the city enacted that type of prohibition in

---

[11] It is undisputed that the ordinance restricting the number of signs within a 150-foot radius from the intersection does not bar the proposed sign in this case.

section 91.6205.6, which applies to signs within 2,000 feet of a freeway.[12] At those locations, section 91.6205.6.1 prohibits signs that may be "viewed primarily from a main traveled roadway of a freeway or an on-ramp/off-ramp." (§ 91.6205.6.1.) Section 91.6205.6.1 defines the phrase, "viewed primarily from," as meaning: "that the message may be seen with reasonable clarity for a greater distance by a person traveling on the main traveled roadway of a freeway or on-ramp/off-ramp than by a person traveling on the street adjacent to the sign." (§ 91.6205.6.1.)

Reading the spacing ordinance in the proper context of the related ordinances governing the location of signs, the only reasonable conclusion we may draw is that the plain language of the ordinance must control in this case. As both Kumabi and Holguin explained on behalf of the Department, Van Wagner's sign is not prohibited by the 600-foot spacing ordinance because it is not on the same side of the same street as the existing sign. We conclude, as a matter of law, that the trial court erred in denying Van Wagner's petition for administrative mandamus.

II

*Inverse Condemnation**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

DISPOSITION

We reverse Judge Yaffe's order denying appellant's petition for writ of administrative mandamus (second cause of action). We direct Judge Yaffe on remand to issue a new order granting the petition for administrative mandamus and directing the city to reinstate Van Wagner's sign permit.

We affirm Judge Yaffe's order granting the city's motion for judgment on the pleadings on the first cause of action for traditional mandamus (Code Civ. Proc., § 1085).

We reverse Judge Ferns's order granting the city's motion for judgment on the pleadings on the third cause of action for inverse condemnation.

We affirm Judge Ferns's order granting the city's motion for judgment on the pleadings on the fourth cause of action for estoppel.

---

[12]It is undisputed that section 91.6205.6 does not apply to this case.
*See footnote, *ante*, page 499.

Given our determination that the permit should be reinstated, the cross-complaint concerning ACP's right to keep Van Wagner's $100,000 payment is moot. We direct Judge Ferns on remand to vacate the order granting summary judgment and awarding costs and fees to ACP, and enter a new order of dismissal directing the parties to bear their own costs and fees.

The parties are to bear their own costs on appeal.

Spencer, P. J., and Mallano, J., concurred.