[No. B153024. Second Dist., Div. Two. Sept. 6, 2002.]

VILLAGE TRAILER PARK, INC., Petitioner, v.
SANTA MONICA RENT CONTROL BOARD, Respondent;
VERNON VAN WIE et al., Real Parties in Interest.

1134

## COUNSEL

Law Offices of Rosario Perry and Rosario Perry for Petitioner.

Doris M. Ganga and Joel Martin Levy for Respondent.

No appearance for Real Parties in Interest.

## OPINION

**BOREN, P. J.**—This dispute concerns the Santa Monica rent control law. The owner of a trailer park argues that the Santa Monica Rent Control Board has no jurisdiction to determine whether mobilehome leases are subject to rent control. The trial court found that the rent control board is entitled to determine whether the leases are exempt from rent control, and is authorized to impose excess rent penalties; however, the court remanded the matter to the rent control board for further proceedings. Both parties have appealed.

There is no final, appealable judgment. Nevertheless, we choose to treat the purported appeals as petitions for a writ of mandate. We conclude: (1) the rent control board has jurisdiction to determine whether mobilehome leases are exempt from local rent control; (2) an arbitration clause in a mobilehome lease does not prevent the rent control board from applying the rent control law to the landlord; (3) a landlord is not entitled to advance notice of a rent control violation before being assessed for charging excess rent; (4) the rent control board may award the tenant interest on the excess rent collected by the landlord; and (5) the board may exclude annual rent increases when calculating the amount of excess rent to induce the landlord to comply with the rent control law.

## FACTS AND PROCEDURAL HISTORY

Village Trailer Park, Inc. (Village) operates its business in the City of Santa Monica (the City). The Santa Monica City Charter (City Charter), article XVIII, contains a rent control law (the Rent Control Law). The Rent Control Law is administered by the City's rent control board (the Board).

In 1999, 12 of Village's tenants filed complaints with the Board alleging that Village violated the Rent Control Law by charging "excess rent." Village objected that the Board has no jurisdiction to decide whether the tenants' leases are subject to (or exempt from) the Rent Control Law, and requested that the administrative proceedings be dismissed.

Village's objection was overruled by the administrative hearing officer, who proceeded to take evidence to determine if the leases at issue are exempt from rent control pursuant to the state Mobilehome Residency Law (MRL). (Civ. Code, § 798 et seq.) The hearing officer found that Village's leases do not satisfy the requirements for exemption under the MRL and are subject to the Rent Control Law. The tenants were awarded restitution of the excess rent. The total amount awarded to the 12 tenants was $63,677.87, including interest.

Village pursued an administrative appeal, renewing its argument that the Board has no power to interpret the MRL or invalidate the leases. The Board rejected Village's argument and adopted the hearing officer's decision.

Village petitioned the trial court for a writ of mandate. The trial court found that the Board's exercise of its administrative power did not violate the state constitutional clause regarding judicial powers, nor is the Board's action preempted by the MRL. In addition, the court concluded that the arbitration clause in the leases does not bar administrative rent control regulation and that the Board's award of interest is authorized by the Rent Control Law. Finally, the court determined that the manner in which damages were calculated exceeded the Board's power. The court remanded the matter to the Board to reconsider the manner in which it calculated damages.

### DISCUSSION

### *Appealability*

The judgment partly granted the writ petition and remanded the proceeding to the Board. The peremptory writ of mandate commands the Board "to reconsider your action" with respect to the calculation of damages. ■ A

remand order to an administrative body is not appealable. (*Board of Dental Examiners v. Superior Court* (1998) 66 Cal.App.4th 1424, 1430 [78 Cal.Rptr.2d 653].) ■ We may, however, exercise our discretion and treat an appeal as a petition for a writ of mandate. (*Ibid.*) This is an appropriate case for the exercise of our discretion; therefore, we treat the appeals from a nonappealable order as writ petitions.

*Village's Appeal*

1. *The MRL Preemption Issue*

■ The trial court concluded that the MRL does not preempt the City's Rent Control Law. Village complains that the trial court erroneously relied upon the Board's interpretation of the MRL, and asserts that the local rent control law is preempted by state law.

■ Review of this issue is de novo. "[W]e independently determine the proper interpretation of the statute. As the matter is a question of law, we are not bound by evidence on the question presented below or by the lower court's interpretation." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) Our objective is to ascertain and implement legislative intent by examining the statutory language with reference to the entire system of law of which it is a part. (*Ibid.*; *American Federation of State etc. Employees v. County of San Diego* (1992) 11 Cal.App.4th 506, 515 [14 Cal.Rptr.2d 51].) ■ In an administrative mandamus proceeding, the court determines whether an agency has acted under an incorrect legal interpretation of a statutory provision. (*Hawthorne Savings & Loan Assn. v. City of Signal Hill* (1993) 19 Cal.App.4th 148, 157 [23 Cal.Rptr.2d 272].)

■ Local legislation cannot conflict with state law. " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' " (*Sherwin Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534].) When a conflict arises between state and local laws, state law preempts the local legislation. (*Ibid.*)

■ The MRL does not prohibit local regulation of rents in mobilehome parks. (*Griffith v. County of Santa Cruz* (2000) 79 Cal.App.4th 1318, 1323 [94 Cal.Rptr.2d 801]; *Palos Verdes Shores Mobile Estates, Ltd. v. City of Los Angeles* (1983) 142 Cal.App.3d 362, 373-374 [190 Cal.Rptr. 866].) Instead, the MRL delineates the limited circumstances under which a mobilehome rental agreement is exempt from local rent control measures. (Civ. Code,

§ 798.17.)[1] Village does not point to any aspect in which the Rent Control Law " ' " " 'duplicates, contradicts, or enters an area fully occupied' " ' " by the MRL. (*Sherwin Williams Co. v. City of Los Angeles, supra,* 4 Cal.4th at p. 897.)

Village relies on a case that does not address any conflict between the City's Rent Control Law and state law. The case, *Mobilepark West Homeowners Assn. v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32 [41 Cal.Rptr.2d 393] (*Escondido*), concerned the validity of rent control ordinances adopted by the City of Escondido, which imposed additional requirements for long-term mobilehome lease agreements that went beyond the requirements provided in Civil Code section 798.17. In dicta, the appellate court stated that the additional requirements of the Escondido ordinances contradicted the MRL.[2]

*Escondido* is inapposite. Unlike the landlord in *Escondido*, Village does not contend that the Rent Control Law adds any further or contradictory requirements to Civil Code section 798.17. The appellate court's concern in *Escondido* was whether the Escondido City Council attempted to rewrite state law. The court in *Escondido* did not consider whether the city usurped a judicial function by applying Civil Code section 798.17 to a particular case.

Rent control of mobilehome parks is a valid exercise of the City's police power as "a rational curative measure" designed to alleviate a shortage of mobilehome spaces and rising rental rates. (*Carson Mobilehome Park Owners' Assn. v. City of Carson* (1983) 35 Cal.3d 184, 189, fn. 4 [197 Cal.Rptr. 284, 672 P.2d 1297].) The Board is vested with authority to administer and enforce the Rent Control Law. (*Richman v. Santa Monica Rent Control Bd.* (1992) 7 Cal.App.4th 1457, 1459 [9 Cal.Rptr.2d 690].) When the Board heard the tenants' claim that Village was violating the Rent Control Law by charging excess rents, the burden fell upon Village to present evidence proving that some or all of the leases in question are exempt from local regulation.

---

[1] The MRL exempts from rent control mobilehome leases that are for a term of more than 12 months, if the homeowner (a) uses the rental as a personal residence, (b) is offered a 30-day period for acceptance or rejection of the rental agreement, (c) is afforded a 72-hour period to void the rental agreement, and (d) is given the choice of signing a short-term lease. (Civ. Code, § 798.17, subds. (b), (c).)

[2] The court decided at the outset that the Escondido rent control ordinances were invalidly amended by the city council rather than through the initiative process. (*Escondido, supra,* 35 Cal.App.4th at pp. 40-43.) Nevertheless, the court went on to address the substance of the invalid amendments as a matter of public interest. (*Id.* at p. 43.)

■ "An administrative agency may constitutionally hold hearings, determine facts, apply the law to those facts, and order relief—including certain types of monetary relief—so long as (i) such activities are authorized by statute or legislation and are *reasonably necessary* to effectuate the administrative agency's *primary, legitimate regulatory purposes,* and (ii) the *'essential' judicial power* (i.e., the power to make enforceable, binding judgments) *remains ultimately in the courts, through review of agency determinations." (McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 372 [261 Cal.Rptr. 318, 777 P.2d 91].)

■ The Board's administration and enforcement of the Rent Control Law includes setting and regulating rents in the local housing market, as is authorized by the City Charter. Issuing excess rent decisions, though judicial in nature, is reasonably necessary to accomplish the Board's primary legitimate regulatory purposes. (*McHugh v. Santa Monica Rent Control Bd., supra,* 49 Cal.3d at p. 375.) The Board cannot be prevented from carrying out its regulatory function every time a landlord claims its leases are exempt from rent control. The landlord must present evidence at the administrative hearing that its mobilehome leases are exempt and the Board must apply Civil Code section 798.17 to resolve the question. If the landlord disagrees with the Board's application of section 798.17, judicial review is available by way of a petition for a writ of mandate.

Determining whether a mobilehome lease is exempt from rent control is not an exclusively judicial function. ■ "Statutory interpretation is ultimately a judicial function. 'Nevertheless, "the contemporaneous construction of a statute by an administrative agency charged with its administration and interpretation, while not necessarily controlling, is entitled to great weight and should be respected by the courts unless it is clearly erroneous or unauthorized . . . ." ' " (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70 Cal.App.4th 281, 290 [82 Cal.Rptr.2d 569].) The same standard applies to local ordinances. (*Ibid.; Van Wagner Communications, Inc. v. City of Los Angeles* (2000) 84 Cal.App.4th 499, 509, fn. 9 [100 Cal.Rptr.2d 922].)

■ The threshold exemption question presented to the Board is analogous to the question presented to a state agency in *Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976 [4 Cal.Rptr.2d 837, 824 P.2d 643]. In *Lusardi,* the Director of the Department of Industrial Relations initiated action against a building contractor who was working on a public hospital, but was not paying its employees prevailing wage rates. The contractor objected that the director did not have authority to determine whether a construction project is

a "public work" subject to the prevailing wage rule. The Supreme Court rejected the contractor's argument, finding that even though there was no express statutory authorization, the director's function of promoting the welfare of California wage earners gives him an implied power to interpret statutes to determine whether a construction project is a "public work" subject to prevailing wage regulations. (*Id.* at pp. 988-989.)

The same reasoning applies here. Although Civil Code section 798.17 does not expressly direct rent control boards to determine whether a mobile-home lease is exempt from regulation, authority to make this determination may be implied from the local agency's function of enforcing local laws prohibiting landlords from charging excess rents.[3] The local rent control agency's determination is, of course, subject to judicial review. ■ "Administrative adjudication in the course of exercising an administrative agency's regulatory power, if subject to judicial review, does not deny participants their right to judicial determination of their rights." (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 15 [32 Cal.Rptr.2d 244, 876 P.2d 1043].) ■ By applying Civil Code section 798.17 to the leases before it, the Board did not usurp a judicial function.

## 2. *Application of Civil Code Section 798.17*

■ Village was afforded a lengthy evidentiary hearing. The adminis-trative record is several thousand pages long. The Board determined that Village's mobilehome leases do not satisfy the requirements of Civil Code section 798.17 and are not exempt from rent control. Though Village pursued judicial review by filing a petition for a writ of mandate, it has not argued in the trial court or in this court that the Board's determination is factually insupportable. Village maintains that the Board exceeded its juris-diction, but it has not taken the next step of elucidating why the Board's factual and legal conclusions are incorrect. Absent any effort by Village to point to evidence that would establish its claim to an exemption under Civil Code section 798.17, the argument is waived. We must assume that the Board's determination is fully supported by the evidence, and that Village is not entitled to an exemption under Civil Code section 798.17.

---

[3] We observe that when the Legislature wants to limit the authority of a local rent control agency, it expressly says so. For example, Civil Code section 1947.10 authorizes an award of treble damages against a landlord who evicts a rent-controlled tenant by falsely claiming that the landlord (or his immediate relative) intends to occupy the unit. The statute specifies: "If *a court* determines that the eviction was based upon fraud by the owner . . . *a court* may order the owner to pay treble the cost of relocating the tenant . . . ." (Civ. Code, § 1947.10, subd. (a), italics added.) No similar limitation conferring power exclusively on the judiciary is stated in Civil Code section 798.17.

### 3.  *Village's Right to Arbitration*

■   The leases signed by Village's tenants include an arbitration clause. The leases state that "any dispute between us with respect to the provisions of this agreement and tenancy in the community shall be submitted to arbitration conducted under the provisions of Code of Civil Procedure section 1280, et seq." Village maintains that the arbitration clause removes its leases from the ambit of the Rent Control Law.

There are several problems with Village's argument. First, Village cannot exempt itself from the operation of local law by simply announcing that its leases are subject to arbitration. If this were the case, every landlord would similarly announce a personal exemption from the law, thereby undermining a local government's legitimate exercise of its police power. (See *Carson Mobilehome Park Owners' Assn. v. City of Carson, supra*, 35 Cal.3d at p. 189, fn. 4.) Second, the Board is not a party to the leases and is not bound by any arbitration clause or declaration of exemption from rent control. Third, the leases by their own terms state that rent control laws do not apply to the tenancies; therefore, the parties did not contemplate that a dispute over rent control would be an arbitrable matter. Fourth, the local ordinance voids any provision in a rental agreement that purports to waive a tenant's right to pursue a claim under the Rent Control Law. Village's leases are thus void to the extent that they limit tenants' rights to file claims with the Board.

### 4.  *Due Process*

■   Village asserts that its right to due process was violated because it had no advance notice that its lease agreements failed to satisfy the exemption requirements listed in the MRL, or that it was subject to the Rent Control Law. Village complains that it was not given notice or an opportunity to comply with the requirements of the MRL before it was obliged to repay its tenants the excess rent it charged in violation of the Rent Control Law.

All landlords in the City are subject to the Rent Control Law, unless they can establish their right to an exemption. The provisions of the MRL are clear with respect to what a landlord must do to avoid rent control. According to the administrative findings (the substance of which are not challenged on appeal), Village's leases did not specify that they were for a term of more than 12 months; the tenants were not offered a 30-day period for acceptance or rejection of the agreements; and they were not given a 72-hour period to

void the agreements.[4] Village's failure to comply with the mandates of the MRL does not protect Village from an assessment of excess rent for a violation of the Rent Control Law. A landlord who has ignored the dictates of state and local law cannot legitimately argue it has no notice of its wrongdoing until an administrative body or court rules on the issue.

5. *Assessment of Interest*

Village contends that the Rent Control Law does not authorize the assessment of interest. In support of its argument, Village cites a provision of the City Charter stating that a landlord is liable for excess rent "and may be liable for an additional amount not to exceed Five Hundred Dollars ($500), for costs, expenses incurred in pursuing the hearing remedy, damages and penalties." (City Charter, art. XVIII, § 1809, subd. (b).) From this, Village deduces that the Rent Control Law does not allow for interest.

As it turns out, the Board adopted regulations in 1990 that allow for an assessment of interest. The Rent Control Law expressly authorizes the Board to issue rules and regulations to further the purposes of the law. (City Charter, art. XVIII, § 1803, subd. (g).) Regulation 8030 provides that the landlord, in addition to making restitution to the tenant, is liable for "an award of interest of up to $500 on the amount of the excess rent for the period of time during which such excess rent was retained prior to the date of the filing of the complaint. The applicable rate of interest shall be the rate specified by law (California Constitution, Article XV) and shall be simple interest." The administrative decision in this case imposed interest pursuant to regulation 8030.

Village believes that section 1809 of the City Charter conflicts with regulation 8030. " 'The scope of our review of an administrative agency's regulations is limited: we consider whether the challenged provisions are consistent and not in conflict with the enabling statute and reasonably necessary to effectuate its purpose. [Citation.] As a general proposition, administrative regulations are said to be "shielded by a presumption of regularity" [citation] and presumed to be "reasonable and lawful." [Citation.] The party challenging such regulations has the burden of proving otherwise. [Citation.]' " (*301 Ocean Avenue Corp. v. Santa Monica Rent Control Board* (1985) 175 Cal.App.3d 149, 154 [221 Cal.Rptr. 610].) "If the Regulations' necessity is reasonably debatable, we cannot second-guess the legislative determination." (*Id.* at p. 157.)

The "damages and penalties" language contained in section 1809 of the City Charter encompasses an award of interest. "The lack of express

---

[4]See footnote 1, *ante.*

authorization for interest . . . is not significant: 'Such a provision would be redundant, as the Legislature provided elsewhere, and generally, in Civil Code section 3287 . . . for the recovery of interest . . . the right to recover which is vested in the claimant on a particular day.' " (*Currie v. Workers' Comp. Appeals Bd.* (2001) 24 Cal.4th 1109, 1116 [104 Cal.Rptr.2d 392, 17 P.3d 749].) In *Currie*, the Supreme Court concluded that the prejudgment interest awarded by the Workers' Compensation Appeals Board to a bus driver who was terminated for discriminatory reasons made up for "the lost use" of wages he was deprived of before his employer was compelled to reinstate him to his job. (*Id.* at pp. 1118-1119.) Similarly, an award of interest to Village's tenants makes up for their lost use of rent monies wrongfully collected by Village each month during the period in question.

### The Board's Appeal

The trial court found that the Board's "calculation of damages by retroactively revoking all annual rent increases . . . constitutes the imposition of a penalty that exceeds the judicial power of the [Board]. By such calculation the [Board] exacts from the landlord more than the tenant would have had to pay if the landlord had complied with the [Rent Control Law]. Such a penalty is not authorized by any statute, and there is no showing that it is necessary to effectuate the administrative agency's primary, legitimate, regulatory purposes."

The Board argues that it did not exceed its power by excluding allowable general adjustments from the maximum lawful rent for purposes of its overcharge calculations. It points to a provision in the Rent Control Law stating, "No landlord shall increase rent under this Article if the landlord: (1) Has failed to comply with any provisions of this Article and/or regulations issued thereunder by the Board . . . ." (City Charter, art. XVIII, § 1805, subd. (h)(1).) Based on this provision, the Board adopted a regulation that excludes rent increases for the preceding three years from the maximum lawful rent, for purposes of calculating overcharges. (Reg. 8024.)

Administrative agencies "regularly exercise a range of powers designed to induce compliance with their regulatory authority (e.g., imposition of fines or penalties, awards of costs and attorney fees) . . . ." (*McHugh v. Santa Monica Rent Control Bd., supra*, 49 Cal.3d at pp. 378-379.) An agency cannot impose treble damages because it "poses a risk of producing arbitrary, disproportionate results that magnify, beyond acceptable risks, the possibility of arbitrariness inherent in any scheme of administrative adjudication." (*Id.* at p. 379.)

There is nothing arbitrary or disproportionate about the regulatory provision at issue here. The Rent Control Law denies rent increases to landlords who have failed to comply with its provisions. When a landlord fails to comply with the law, as Village did here, the Board does not give the landlord the benefit of implementing regular rent increases that the landlord would have enjoyed had the law been obeyed. By denying regular rent increases to noncompliant landlords, the Board is taking reasonable, nonarbitrary measures to induce compliance with the Rent Control Law. Those who comply with the law get the benefit of authorized rent increases; those who do not comply are not entitled to claim the benefit of a rent increase.

If the inclusion of all unauthorized rent increases in the calculation of damages operates as a penalty upon landlords who fail or refuse to obey the Rent Control Law, it is the kind of permissible penalty agencies may impose to induce compliance with their regulatory authority. (*McHugh v. Santa Monica Rent Control Bd., supra*, 49 Cal.3d at p. 379.) The Legislature limits penalties and sanctions against landlords subject to rent control. A landlord who is "in substantial compliance" with local rent control laws cannot be assessed a penalty for noncompliance. (Civ. Code, § 1947.7, subd. (b).) "Substantial compliance" means that the landlord "has made a good faith attempt to comply" with the law and has, after receiving notice of a deficiency, "cured the defect in a timely manner . . . ." (*Ibid.*)

Village has not shown how it was "in substantial compliance" with the Rent Control Law. Village failed to comply with the MRL's fundamental requirement that a tenant be offered the choice of a short-term or a long-term lease. (Civ. Code, § 798.17, subd. (c).) According to the unchallenged administrative findings, Village made all of its tenants sign long-term leases declaring an exemption from rent control, even when tenants wanted short-term, rent-controlled leases. Once the Board alerted Village to its violation of the Rent Control Law, Village made no effort to comply with the law. Under the circumstances, we cannot say that Village substantially complied with the Rent Control Law, or that the Board was precluded from imposing a penalty to induce Village's compliance with the Rent Control Law.

The trial court erred by finding that there is no authority for the Board's calculation of damages; furthermore, including all unauthorized rent increases in the damages calculation helps to effectuate the Board's primary, legitimate regulatory purpose of inducing landlords to comply with the Rent Control Law.

DISPOSITION

The petition for a writ of mandate filed by Village Trailer Park, Inc., is denied. The petition for a writ of mandate filed by the Santa Monica Rent

Control Board is granted. Let a writ of mandate issue directing the trial court to vacate its order remanding the cause to the Santa Monica Rent Control Board for further proceedings. Costs are awarded to the Rent Control Board.

Nott, J., and Doi Todd, J., concurred.

On September 24, 2002, the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied November 26, 2002.